The **NEW YORK STATE DEPARTMENT OF SOCIAL SERVICES and Cesar Perales, as Commissioner of the New York State Department of Social Services, Plaintiffs,**

v.

**Otis R. BOWEN, Secretary of Health and Human Services, Defendant.**

**No. 83 Civ. 7548 (RJW).**

United States District Court, S.D. New York.

June 10, 1987.

Robert Abrams, Atty. Gen. of the State of N.Y., New York City, for plaintiffs; Mary Fisher Bernet, Asst. Atty. Gen., of counsel.

Rudolph W. Giuliani, U.S. Atty., South. Dist. of N.Y., New York City, Attorney for

defendant; Paula A. Sweeney, Asst. U.S. Atty., David Engel, U.S. Dept. of Health and Human Services, of counsel.

ROBERT J. WARD, District Judge.

Plaintiff, the New York State Department of Social Services ("NYSDSS"), has instituted this action to challenge a regulation of the Department of Health and Human Services ("HHS"), multiple determinations by the Secretary pursuant to that regulation, and HHS policy on administrative hearings. The plaintiff challenges: (1) multiple determinations by the Secretary that deny NYSDSS (as alleged subrogee of certain Medicare beneficiaries' rights) the right to an administrative hearing on a determination of the amount of Medicare Part A benefits payable for certain extended care services; and (2) HHS regulation 42 C.F.R. § 433.146(b), which specifies that state statutes may not provide for the assignment to the state of Medicaid recipients' rights to Medicare benefits.

Plaintiff contends that the HHS policy and regulations have unlawfully denied NYSDSS its statutory right to an administrative hearing under 42 U.S.C. §§ 405(b) and (g) and § 1395ff(b), which it is entitled to exercise as statutory subrogee (under New York state law) of the individual Medicaid recipients' rights to Medicare benefits. Plaintiff further contends that the HHS policy and regulations unlawfully preclude its pursuit of recoupment from the Medicare program of Medicaid funds expended for extended care services that Medicare erroneously refused to cover. Plaintiff seeks injunctive and declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

Two motions are presently pending before this Court. Plaintiff has moved for summary judgment pursuant to Rule 56, Fed.R.Civ.P. Defendant has moved to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), Fed.R.Civ.P., or, in the alternative, for summary judgment pursuant to Rule 56, Fed.R.Civ.P. For the reasons stated below, this Court denies defendant's motion to dismiss for lack of subject matter jurisdiction, denies plaintiffs' motion for summary judgment, and grants defendant's motion for summary judgment.

## BACKGROUND

This case relates to the interaction between cost containment provisions of Medicare and Medicaid, two federal health care financing programs. The instant dispute concerns conflicts which arise when an individual receiving health care services is dually entitled to benefits from both programs.[1]

### The Federal Medicare Program

Title XVIII of the Social Security Act, 42 U.S.C. § 1395 et seq., was enacted by Congress in 1965 to establish a federally funded system of health insurance for the aged and the disabled. This system of health insurance, commonly known as Medicare, is administered by HHS.

The Medicare program consists of two parts—Part A and Part B. Part A provides basic insurance against the costs of hospitalization and post-hospitalization care. Part B provides supplemental medical insurance against the costs of other medical and health services. This case involves issues relating to Part A coverage of post-hospitalization care provided to certain indigent Medicare beneficiaries in extended care facilities.

Individuals are entitled to Part A coverage once they have established their eligibility for Social Security benefits under Title II of the Social Security Act, 42 U.S.C. § 1395c. Part A benefits are paid directly to the providers of services on behalf of the Medicare beneficiary. These benefits include coverage of up to 150 days of inpatient hospital services and up to 100 days of post-hospitalization extended care services during any spell of illness. 42 U.S.C. § 1395d(a). Medicare-covered extended care services are primarily medical in nature. They include the care provided by a skilled nursing facility, 42 U.S.C. § 1395x(u); however, they do not include the care of a more custodial nature provided by an intermediate care facility.

To administer the day-to-day operations of the Medicare program, HHS contracts

---

**1.** Jurisdiction is alleged to be proper under 42 U.S.C. §§ 405(g) and 1395ff (Title XVIII of the Social Security Act) and 28 U.S.C. §§ 1331, 1346(a)(2), and 1361.

with "fiscal intermediaries." The fiscal intermediaries, which are typically health and accident insurance companies, act as HHS agents in performing claim-related activities, such as the audit and payment of claims submitted by providers of post-hospitalization extended care. In one facet of the audit process, which is at the basis of the dispute in this case, the fiscal intermediary determines whether providers' claims for reimbursement represent services covered under Part A and services that are reasonable and necessary.

In auditing claims submitted by extended care facilities, the fiscal intermediary must make a level of care determination—i.e., determine whether the services provided were skilled nursing care, which *is* covered by Part A, or custodial care, which is *not* covered by Part A or Part B of Medicare.

When the fiscal intermediary determines that the care provided was non-covered custodial care, the Medicare beneficiary is entitled to administrative review of the decision (including reconsideration and hearing), as provided in 42 U.S.C. § 405(b), and judicial review of the Secretary's final decision, as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1395ff(b); 42 C.F.R. § 405.701 *et seq.*

A provider of services may request reconsideration of a determination that (1) services it provided are not covered by reason of 42 C.F.R. § 405.310(g) (custodial care) or 42 C.F.R. § 405.310(k) (treatment not reasonable or necessary) and (2) either the beneficiary or the provider knew or should have known that services were not covered. A provider is also entitled to an administrative hearing and judicial review of such a determination if the Secretary determines that the individual beneficiary will not exercise his appeal rights. 42 U.S.C. § 1395pp(d).

### The Federal–State Medicaid Program

Title XIX of the Social Security Act, 42 U.S.C. § 1396 *et seq.*, was enacted by Congress in 1965 to create federal-state welfare programs that would pay the costs of necessary medical services provided to certain indigent individuals whose income and resources are insufficient to meet the costs of medical care. These programs, commonly known as Medicaid, are jointly funded by federal and state monies.

Each individual Medicaid program is administered jointly through a federal-state partnership between HHS and a designated state agency. In New York, the designated single state agency responsible for the administration of Medicaid is NYSDSS. The terms of the federal-state partnership are embodied in a state plan, which is submitted by the single state agency and must be approved by HHS. Each state is free to define the scope of its Medicaid program—e.g., eligibility standards, covered services, administrative procedures—within the framework of federal statutory and regulatory requirements. Each state is responsible for administering its own Medicaid program in accordance with federal statutory and regulatory requirements and the federally approved state plan. HHS performs an oversight function—promulgating regulations, reviewing and approving state plans, and monitoring state agency performance—to ensure that state agencies operate their Medicaid programs in accordance with federal requirements and the approved state plans.

One statutory requirement that must be reflected in all state plans is a "third party liability" provision. This provision requires recoupment of federal-state Medicaid funds from third parties who are liable for medical care provided to Medicaid recipients. 42 U.S.C. § 1396a(a)(25). A state plan must also provide that Medicaid applicants, as a condition of eligibility, assign to the state whatever rights they may have to payment for medical care.[2] 42 U.S.C. §§ 1396a(a)(45) and 1396k(a)(1)(A); 42 C.F.R. §§ 433.145 to 433.149.

In order to comply with the Medicaid assignment of rights requirement, a state may enact a law which provides for automatic assignment to the state of all Medicaid recipients' rights to third party payments for medical care. 42 C.F.R.

---

**2.** Prior to the enactment of the 1984 Deficit Reduction Act (DEFRA), Pub.L. No. 98–369, states were *permitted* to require assignment of rights to medical benefits as a condition of Medicaid eligibility. DEFRA made assignment of rights a mandatory condition of eligibility.

§ 433.146(c). New York state has enacted such statutory assignment provisions.[3] However, HHS regulations provide that assignment of rights to medical benefits may not include assignment of rights to Medicare benefits. 42 C.F.R. § 433.146(b).

## DISCUSSION

The NYSDSS administers the Medicaid program for New York state pursuant to a state plan approved by HHS. NYSDSS has identified a listing of New York State Medicaid recipients whose initial claims for Medicare reimbursement of costs for services provided in an extended care facility have been denied. In each instance, the claim was timely and the denial was based on HHS determinations that the individual did not require or receive skilled nursing care during part or all of the period in question (i.e. the individual did not require skilled nursing care and, therefore, received only custodial care that is not covered by Medicare).

Each of the providers of services requested reconsideration of the denial through the timely filing of a Reconsideration Request pursuant to 42 U.S.C. § 1395ff; 42 C.F.R. §§ 405.710. HHS again denied benefits on reconsideration on the same grounds. Neither the individuals receiving the care nor the providers requested an administrative hearing of the determination.

At this point in the administrative review process, NYSDSS notified HHS of its subrogation to the rights of these Medicare beneficiaries pursuant to New York State Social Services Law § 367–a and New York State Insurance Law § 166. When these reconsiderations were denied, medical professionals working in NYSDSS reviewed the patients' files to determine, in their professional opinion, whether HHS' decision to deny Medicare reimbursement was appropriate.[4] In each of the cases listed in Attachment A to the plaintiffs' complaint, NYSDSS filed a timely request for an administrative hearing pursuant to 42 U.S.C. §§ 405(g) and 1395ff. In each hearing request, NYSDSS alleged that it was the subrogee of these persons' rights under the Medicare program pursuant to New York State Social Services Law § 367–a and New York State Insurance Law § 166.

With two exceptions,[5] HHS dismissed the hearing requests filed by NYSDSS because (1) NYSDSS was neither a party nor a representative of a party to the reconsideration determination and/or (2) federal regulations do not authorize a subrogee to appeal.

Again asserting its right as subrogee, NYSDSS made a timely request for an HHS Appeals Council review of the decision not to conduct an administrative hearing pursuant to 20 C.F.R. § 404.967 and 42 C.F.R. § 405.724. The HHS Appeals Council denied each review request filed by NYSDSS on the ground that none of the criteria for review specified in 20 C.F.R. § 404.970 had been met.[6]

Upon denial of Medicare reimbursement for the extended care services received by

---

3. New York State Social Services Law § 367–a(2)(b) provides:

Any inconsistent provision of this chapter or other law notwithstanding, upon furnishing assistance under this title to any applicant or recipient of medical assistance, the local social services district or the department shall be subrogated, to the extent of the expenditure by such district or department for medical care furnished, to any rights such person may have to medical support or third party reimbursement.

New York State Insurance Law § 166(4)(b) provides, in pertinent part:

Notwithstanding any inconsistent provision of this section or other law, any right of subrogation of benefits to which a local social services district or the department of social services shall be entitled shall be valid and enforceable to the extent benefits are available under any individual accident and health insurance, group or blanket accident and health insurance, or noncancellable disability insurance policy, or any subscriber contract made by a corporation subject to the provisions of article nine–C of this chapter....

4. Affidavit of Jayline M. Tucker, Project Manager of NYSDSS' Medicare Optimization Project for the Metropolitan Regional office.

5. In these two instances, HHS conducted a hearing and reversed the denial of Medicare reimbursement. However, these two hearing decisions were later vacated by the HHS Appeals Council on the grounds that NYSDSS was not the beneficiary's representative.

6. 20 C.F.R. 404.970 provides:

§ 404.970 Cases the Appeals Council will review.

these individuals who were dually entitled to Medicare and Medicaid, NYSDSS was required to pay for the services, since they constituted custodial care which is covered by Medicaid.[7] Approximately half of the Medicaid funds expended to cover the services provided were state funds; the remainder of the Medicaid funds expended were federal funds. NYSDSS alleges at least $346,984 was paid out under the Medicaid program to cover extended care provided in cases where HHS denied NYSDSS the right to a hearing.

■ NYSDSS filed suit in this court asserting its statutory rights as subrogee under New York State law and arguing that the HHS regulation, 42 C.F.R. § 433.-146(b), preventing assignment of Medicaid recipients' rights to Medicare benefits, violates 42 U.S.C. § 1396a(a)(25), which requires recoupment of federal-state Medicaid funds from third parties who are liable for medical care provided to the Medicaid recipient. NYSDSS further argues that HHS policy denying NYSDSS an administrative hearing denied its statutory right (as subrogee of the Medicare beneficiary) to a hearing under 42 U.S.C. § 405(b) and its Constitutional right to due process.[8]

## I. Jurisdiction

Plaintiff asserts jurisdiction on multiple grounds: (1) under 42 U.S.C. §§ 405(g) and 1395ff, the statutory grant of jurisdiction for Medicare claims, (2) under 28 U.S.C. § 1361, mandamus jurisdiction, (3) under 28 U.S.C. § 1331 and (4) under 28 U.S.C. § 1346(a)(2). For the purpose of determining whether this Court has subject matter jurisdiction over plaintiffs' claim, this Court can view the claim in two different contexts: First, in the context of 42 U.S.C. §§ 405(g)[9] and 1395ff,[10] plaintiffs' claim

(a) The Appeals Council will review a case if—
(1) There appears to be an abuse of discretion by the administrative law judge;
(2) There is an error of law;
(3) The action, findings or conclusions of the administrative law judge are not supported by substantial evidence; or
(4) There is a broad policy or procedural issues that may affect the general public interest.
(b) If new and material evidence is submitted with the request for review, the Appeals Council shall evaluate the entire record. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently in the record.

7. HHS has not conducted the extensive file search necessary to determine whether the facts in each of the cases cited by NYSDSS are true. HHS agrees, however, that the facts as stated are true in at least one of the cases cited and may be true in many more of the cases cited. For the purposes of summary judgment, the legal issues to be decided are the same whether one case or whether every case cited by plaintiff conforms to the fact pattern described. See Defendant's Memorandum of Law in Support of Motion to Dismiss for Lack of Subject Matter Jurisdiction and Motion for Summary Judgment, at 6.

8. NYSDSS claims that the HHS policy denying it a hearing and the HHS regulation precluding a state's reliance on a statute providing automatic assignment of Medicaid recipients' rights to Medicare benefits violate its Fifth Amendment due process rights. The claim is meritless, since "the word 'person' in the context of the Due Process Clause of the Fifth Amendment cannot, by any reasonable mode of interpretation, be expanded to encompass the States of the Union...." State of South Carolina v. Katzenbach, 383 U.S. 301, 323, 86 S.Ct. 803, 816, 15 L.Ed.2d 769 (1966).

9. 42 U.S.C. § 405(g) provides, in pertinent part:
Any individual, after a final decision of the Secretary made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Secretary may allow....

10. 42 U.S.C. § 1395ff provides:
Determinations of Secretary
(a) Entitlement to and amount of benefits
The determination of whether an individual is entitled to benefits under part A or part B of this subchapter, and the determination of the amount of benefits under part A of this subchapter, shall be made by the Secretary in accordance with regulations prescribed by him.
(b) Appeal by individuals
(1) Any individual dissatisfied with any determination under subsection (a) of this section as to—
(A) whether he meets the conditions of section 426 or section 426a of this title, or
(B) whether he is eligible to enroll and has enrolled pursuant to the provisions of part B of this subchapter, or section 1395i–2 of this title, or section 1819, or
(C) the amount of benefits under part A of this subchapter (including a determination

seeks benefits arising under the Medicare Act. Following this line of reasoning, plaintiffs are seeking relief in their role as subrogee of the Medicare beneficiary. In

effect, plaintiffs come before this Court as subrogee of each of the Medicare beneficiaries listed in its complaint seeking review of HHS' decisions to deny it a hear-

where such amount is determined to be zero) shall be entitled to a hearing thereon by the Secretary to the same extent as is provided in section 405(b) of this title and to judicial review of the Secretary's final decision after such hearing as is provided in section 405(g) of this title.

(2) Notwithstanding the provisions of subparagraph (C) of paragraph (1) of this subsection, a hearing shall not be available to an individual by reason of such subparagraph (C) if the amount in controversy is less than $100; nor shall judicial review be available to an individual by reason of such subparagraph (C) if the amount in controversy is less than $1,000.

(c) Appeal by institutions or agencies

Any institution or agency dissatisfied with any determination by the Secretary that it is not a provider of services, or with any determination described in section 1395cc(b)(2) of this title, shall be entitled to a hearing thereon by the Secretary (after reasonable notice and opportunity for hearing) to the same extent as is provided in section 405(b) of this title, and to judicial review of the Secretary's final decision after such hearing as is provided in section 405(g) of this title

The amended statute, 42 U.S.C.A. § 1395ff (1987 Supp.), now reads in pertinent part:

§ 1395ff. Determinations of Secretary

(a) Entitlement to and amount of benefits

The determination of whether an individual is entitled to benefits under part A or part B of this subchapter, and the determination of the amount of benefits under part A or part B of this subchapter, and any other determination with respect to a claim for benefits under part A of this subchapter shall be made by the Secretary in accordance with regulations prescribed by him.

(b) Appeal by individuals

(1) Any individual dissatisfied with any determination under subsection (a) of this section as to—

(A) whether he meets the conditions of section 426 or section 426a of this title, or

(B) whether he is eligible to enroll and has enrolled pursuant to the provisions of part B of this subchapter or section 1395i–2 of this title,

(C) the amount of benefits under part A or part B of this subchapter (including a determination where such amount is determined to be zero), or

(D) any other denial (other than under part B of subchapter XI of this chapter) of a claim for benefits under part A of this subchapter or a claim for benefits with respect to home health services under part B of this subchapter, shall be entitled to a hearing thereon by the Secretary to the same extent as is provided

in section 405(b) of this title and to judicial review of the Secretary's final decision after such hearing as is provided in section 405(g) of this title. Sections 406(a), 1302, and 1395hh of this title shall not be construed as authorizing the Secretary to prohibit an individual from being represented under this subsection by a person that furnishes or supplies the individual, directly or indirectly, with services or items solely on the basis that the person furnishes or supplies the individual with such a service or item. Any person that furnishes services or items to an individual may not represent an individual under this subsection with respect to the issue described in section 1395pp(a)(2) of this title unless the person has waived any rights for payment from the beneficiary with respect to the services or items involved in the appeal. If a person furnishes services or items to an individual and represents the individual under this subsection, the person may not impose any financial liability on such individual in connection with such representation.

(2) Notwithstanding paragraph (1)(C), in the cases of a claim arising—

(A) under part A, a hearing shall not be available to an individual under paragraph (1)(C) if the amount in controversy is less than $100 and judicial review shall not be available to the individual under that paragraph if the amount in controversy is less than $1,000; or

(B) under part B, a hearing shall not be available to an individual under paragraph (1)(C) if the amount in controversy is less than $500 and judicial review shall not be available to the individual under that paragraph if the aggregate amount in controversy is less than $1,000.

In determining the amount in controversy the Secretary, under regulations, shall allow two or more claims to be aggregated if the claims involve the delivery of similar or related services to the same individual or involve common issues of law and fact arising from services furnished to two or more individuals. . . .

(C) Appeal by institutions of agencies

Any institution or agency dissatisfied with any determination by the Secretary that it is not a provider of services, or with any determination described in 1395cc(b)(2) of this title, shall be entitled to a hearing thereon by the Secretary (after reasonable notice and opportunity for hearing) to the same extent as is provided in section 405(b) of this title, and to judicial review of the Secretary's final decision after such hearing as is provided in section 405(g) of this title.

ing. Second, plaintiffs' complaint can be viewed as a challenge to HHS' regulations and policy precluding the assignment of Medicaid recipients' rights to Medicare benefits and, consequently, denying subrogees' rights to administrative hearings on Medicare claims.

### A. *Jurisdiction of the Claim for Benefits Arising Under the Medicare Act*

■ Relying on its rights as subrogee under New York law, plaintiff contends that jurisdiction for its claim is based in 42 U.S.C. §§ 405(g) and 1395ff. Defendant contends that Congress' grant of jurisdiction under these provisions is precisely drawn to exclude all claimants except for the individual beneficiary and the provider.

Examination of the statutory language, the legislative history, and the Supreme Court's decision in *United States v. Erika, Inc.*, 456 U.S. 201, 102 S.Ct. 1650, 72 L.Ed.2d 12 (1982), leads this Court to conclude that judicial review of NYSDSS' claim is unavailable under 42 U.S.C. §§ 405(g) and 1395ff. The statute provides an express grant of jurisdiction for individual beneficiaries and providers. An individual beneficiary is entitled to judicial review of a determination that he is not eligible for Part A benefits or a determination of the amount of Part A benefits provided that the amount in controversy is $1000 or more. 42 U.S.C. § 1395ff(b). HHS regulations also provide that an individual may be represented by a person who can pursue a hearing on the individual's behalf. 20 C.F.R. §§ 404.1705, 404.1707. Plaintiff clearly does not qualify as an individual beneficiary. Neither are plaintiffs acting as an individual's representative, since plaintiffs' interests may differ from the individual's interests. The only other party entitled to judicial review of a determination by the Secretary relating to the amount of benefits is a provider of services. 42 U.S.C. §§ 1395ff(c), 1395oo(f), and 1395pp(d). NYSDSS does not allege that it qualifies as a provider of health care services.

The legislative history of the judicial review provisions indicates that Congress fully intended to limit judicial review of final decisions of the Secretary on the amount of benefits. It states:

> The committee's bill provides for the Secretary to make determinations, under both the hospital insurance plan [Part A] and the supplementary plan [Part B], as to whether individuals are entitled to [Part A] hospital insurance benefits or [Part B] supplementary medical insurance benefits and for hearings by the Secretary and judicial review where an individual is dissatisfied with the Secretary's determination. Hearings and judicial review are also provided for where an individual is dissatisfied with a determination as to the amount of benefits under the [Part A] hospital insurance plan if the amount in controversy is $1,000 or more.... Hospitals, extended care facilities, and home health agencies would be entitled to hearing and judicial review if they are dissatisfied with the Secretary's determination regarding their eligibility to participate in the program. It is intended that the remedies provided by these review procedures shall be exclusive.

S.Rep. No. 404, 89th Cong., 1st Sess., 54–55 (1965). *See also* H.R.Rep. No. 213, 89th Cong., 1st Sess., 47 (1965), U.S.Code Cong. & Admin.News 1965, p. 1943.

In *Erika, supra,* 456 U.S. at 208, 102 S.Ct. at 1654, the Supreme Court examined essentially the same language with respect to Part B of the Medicare program, where judicial review is even more restricted, and held with respect to Congress' failure to authorize further review provisions:

> In the context of the statute's precisely drawn provisions, this omission provides persuasive evidence that Congress deliberately intended to foreclose further review of such claims.

The issue in the present case involves a different part of the Medicare program and a different statutory grant of jurisdiction than in *Erika*, in that this case relates to Part A of the Medicare program rather than Part B. Also, the limitation on judicial review relates to the parties who are entitled to seek judicial review rather than total preclusion of judicial review of a de-

termination of an amount of benefits. Nonetheless, the reasoning of the *Erika* decision applies equally well to the jurisdictional issue in this case. While Congress intended to provide a right to judicial review of some of the Secretary's final determinations under Part A, instead of precluding all judicial review of the Secretary's final determinations as it did under the Part B appeals provision in effect when *Erika* was decided, Congress was still careful to limit the Part A judicial review provision—both in terms of the parties entitled to judicial review and in terms of the amount of the claim in question. Congress' intent to preclude judicial review by parties other than individuals and providers is clear not only from the explicit language of 42 U.S.C. § 1395ff(b) and (c) but also from 42 U.S.C. § 405(h), which provides in pertinent part:

> No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Secretary, or any officer or employee thereof shall be brought under Section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.

42 U.S.C. § 1395ii incorporates 42 U.S.C. § 405(h) into the Medicare Act by reference.

The Supreme Court has interpreted this language to preclude judicial review of determinations of claims for benefits arising under the Medicare Act, except as explicitly provided by statute. *See Weinberger v. Salfi,* 422 U.S. 749, 757–62, 95 S.Ct. 2457, 2462–65, 45 L.Ed.2d 522 (1975) (relating to claims under Title II of the Social Security Act (Social Security retirement and disability benefits)). *Accord, Califano v. Sanders,* 430 U.S. 99, 103 n. 3, 97 S.Ct. 980, 983 n. 3, 51 L.Ed.2d 192 (1977) (relating to reopenings and revisions under Title II).

Following the *Salfi* holding, the Second Circuit has construed 42 U.S.C. § 405(h) to bar judicial review pursuant to 28 U.S.C. § 1331 of a statutory challenge to a reimbursement decision under Part A of the Medicare program. *South Windsor Convalescent Home v. Mathews,* 541 F.2d 910, 913 (2d Cir.1976). Other courts are in accord. *See e.g., Dr. John T. MacDonald Foundation, Inc. v. Califano,* 571 F.2d 328, 331 (5th Cir.1978) (en banc), *cert. denied,* 439 U.S. 893, 99 S.Ct. 250, 58 L.Ed.2d 238 (1978); *Association of American Medical Colleges v. Califano,* 569 F.2d 101, 105–108 (D.C.Cir.1977).

Accordingly, plaintiffs' equitable claim of subrogation to the individual's right to an administrative hearing is barred under each of the jurisdictional grounds asserted by plaintiffs—*i.e.,* under 42 U.S.C. §§ 405(g) and 1395ff, and under 28 U.S.C. §§ 1331, 1346(a)(2), and 1361.[11]

### B. *Federal Question Jurisdiction of a Challenge to the Validity of a Medicare/Medicaid Regulation*

■ Defendant contends that plaintiffs' suit constitutes no more than a claim for benefits arising under the Act. In defendant's view, plaintiff seeks review of almost one hundred different determinations that

---

**11.** The Supreme Court has declined to resolve the question whether mandamus jurisdiction is available in claims arising under the Social Security Act. *Heckler v. Ringer,* 466 U.S. 602, 616, 104 S.Ct. 2013, 2022, 80 L.Ed.2d 622 (1984). However, this Circuit and others have held that mandamus jurisdiction is available in circumstances where the writ would otherwise issue. *See, e.g., Ellis v. Blum,* 643 F.2d 68, 78–82 (2d Cir.1981); *Dietsch v. Schweiker,* 700 F.2d 865, 867–868 (2d Cir.1983); *City of New York v. Heckler,* 742 F.2d 729, 739 (2d Cir.1984), *aff'd sub nom., Bowen v. City of New York,* — U.S. ——, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986); *Ganem v. Heckler,* 746 F.2d 844, 850 (D.C.Cir. 1984); *Kuehner v. Schweiker,* 717 F.2d 813, 819 (3d Cir.1983), *vacated and remanded on other grounds,* 469 U.S. 977, 105 S.Ct. 376, 83 L.Ed.2d 312 (1984). A writ of mandamus would not issue in this case unless the plaintiff has a right to have the act performed, the defendant is under a clear, nondiscretionary duty to perform the act, and the plaintiff has exhausted all other avenues of relief. *See, Heckler, v. Ringer, supra,* 466 U.S. at 616–617, 104 S.Ct. at 2022–2023. As this Court's jurisdictional analysis indicates, plaintiff has no right to an administrative hearing pursuant to 42 U.S.C. §§ 405(g) and 1395ff(b) nor does the defendant have a clear, nondiscretionary duty to provide such a hearing to plaintiff. Accordingly, this Court does not have mandamus jurisdiction over plaintiff's claim.

beneficiaries were entitled to zero benefits and almost one hundred determinations that plaintiff was not entitled to a hearing since it was neither a party to the reconsideration nor the validly appointed representative of the individual. However, the Supreme Court's recent decision in *Bowen v. Michigan Academy of Family Physicians,* — U.S. ——, 106 S.Ct. 2133, 90 L.Ed.2d 623 (1986), raises the question whether plaintiffs' suit can and should be recognized as no more than a claim for benefits arising under the Medicare program. Plaintiff asserts that its claim is not merely a claim for benefits under the statute but also constitutes a statutory challenge to HHS' policy relating to hearings and the HHS regulation 42 C.F.R. § 433.146(c) relating to the non-assignability of certain Medicaid recipients' rights to Medicare benefits, including the right to an administrative hearing. In *Michigan Academy of Family Physicians,* an association of family physicians and individual doctors brought suit challenging the validity of a Medicare Part B regulation authorizing payment of benefits in different amounts for similar physician services. The Court's analysis began with a strong presumption favoring judicial review, noting that "[f]rom the beginning 'our cases [have established] that judicial review of a final agency action by an aggrieved person will not be cut off unless there is persuasive reason to believe that such was the purpose of Congress.'" *Michigan Academy of Family Physicians, supra,* 106 S.Ct. at 2135–2136 (citing *Abbott Laboratories v. Gardner,* 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967)). The Court reiterated the standard for determining that a regulation is nonreviewable under the judicial review provisions of the Administrative Procedure Act (APA), 5 U.S.C. §§ 551–559, 701–706:

> The statutes of Congress are not merely advisory when they relate to administrative agencies, any more than in other cases. To preclude judicial review under this bill a statute, if not specific in withholding such review, must upon its face give clear and convincing evidence of an intent to withhold it. The mere failure to provide specially by statute for judicial

review is certainly no evidence of intent to withhold review.

*Michigan Academy of Family Physicians, supra,* 106 S.Ct. at 2136 (citing S.Rep. No. 752, 79th Cong., 1st Sess., 26 (1945)). To find "clear and convincing evidence" of Congress' intent to preclude judicial review, it is necessary to find "specific language or specific legislative history that is a reliable indicator of Congressional intent" or a specific legislative intent to preclude judicial review that is " 'fairly discernible' in the detail of the legislative scheme." *Michigan Academy of Family Physicians, supra,* 106 S.Ct. at 2137 (citing *Block v. Community Nutrition Institute,* 467 U.S. 340, 349, 351, 104 S.Ct. 2450, 2455, 2456, 81 L.Ed.2d 270 (1984)).

In *Michigan Academy of Family Physicians,* the Government argued that two statutory provisions removed the Secretary's regulation from review under the grant of federal-question jurisdiction found in 28 U.S.C. § 1331. First, the Government argued that 42 U.S.C. § 1395ff(b), which expressly authorizes judicial review of determinations under Part A, precludes by implication judicial review of action taken under Part B, since the statutory scheme fails to expressly provide for judicial review of Part B. Second, the Government argued that 42 U.S.C. § 1395ii, which makes 42 U.S.C. § 405(h) applicable to the Medicare program, expressly precludes any judicial review not specifically authorized by statute. The Court rejected the Secretary's attempt to characterize the plaintiff's claim as a challenge to the determination of the *amount* of benefits rather than a challenge to the *method* of determining benefits. The Court concluded that a challenge to a regulation is not the type of administrative action that constitutes a determination concerning the amount of benefits, for which the legislative scheme did intend to limit appeal.

The case now before this Court is similar to *Michigan Academy of Family Physicians* in terms of the jurisdictional issue relating to the challenge of a regulation. Although the current case involves a question of subject matter jurisdiction relating to Medicare Part A and Medicaid rather

than Medicare Part B, as in *Michigan Academy of Family Physicians*, the Supreme Court's analysis of Congressional intent to restrict judicial review of determination of the amount of Medicare benefits applies equally well with respect to Medicare Part A. Accordingly, this Court finds jurisdiction over plaintiffs' claim that 42 C.F.R. § 433.146(c) violates 42 U.S.C. § 1396(a)(25).

## II. *Standing*

NYSDSS brought suit on its own behalf asserting claims that HHS's hearing policy violated its statutory right as subrogee and that HHS's regulation precluding assignment of Medicare claims violated the third party liability provision of the Medicaid statute. Defendant contends that NYSDSS does not have standing to bring these claims.

■ At a minimum, the Constitution requires that a plaintiff have a "personal stake" in the outcome of a controversy. A plaintiff must show that it has some actual or threatened injury, that the injury can be traced to the challenged action of the defendant, and that the remedy sought would be likely to redress the injury. *See Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982). In addition, the Court must consider whether prudential considerations weigh against permitting a plaintiff to challenge the action in question. Accordingly, a plaintiff must assert its own rights and not the rights of a third party. A plaintiff's injury must be a particularized injury to the plaintiff in question rather than a generalized injury to a large class of individuals. The plaintiff's interest that is injured by the challenged action must also be one which is within the zone of interests protected or regulated by the statute in question. *Id.* at 474–475, 102 S.Ct. at 759–760.

■ Plaintiffs assert an economic injury, since the New York State Medicaid program must pay for the custodial care of an individual dually entitled to Medicare/Medicaid for whom HHS (or its intermediary) has denied Medicare coverage of skilled nursing care. NYSDSS, as the single state agency responsible for administering New York's Medicaid program, finances approximately fifty percent of the costs of its Medicaid program, with the remainder financed by the federal government. Thus, an erroneous level of care determination by HHS or its intermediary results in higher state Medicaid program costs. Since HHS's regulation precluding assignment of Medicare benefits and its policy denying NYSDSS's asserted right to a hearing precludes further administrative review of any erroneous level of care determinations, HHS's action does result in an actual injury in fact to NYSDSS. Granting NYSDSS the right to statutory subrogation of a Medicare recipient's right to an administrative hearing would redress this injury.

Prudential considerations that would weigh against a court's review of the challenged action do not apply in this case. NYSDSS is asserting injury to its interests as administrator of the New York State Medicaid program, not injury to the interests of the individual who is dually entitled to Medicare/Medicaid. In fact, as defendant itself argues, NYSDSS's pursuit of a review of HHS's custodial care determination can at times conflict with the individuals' interests.[12] Further, the injury to plaintiff is particularized and does fall within the zone of interests protected by the third party liability provision of the Medicaid statute. That provision regulates the recoupment of not only federal but also state Medicaid expenditures for which a third party bears financial responsibility.

Accordingly, the Court concludes that NYSDSS has standing to challenge HHS's policy and regulations denying its statutory right under state law to subrogate dually entitled individuals' rights (under federal law) to an administrative hearing.

---

**12.** In some instances, a determination that an individual is receiving skilled nursing care will result in a Medicare beneficiary being required to use or even exhaust his/her one-time allot-ment of Medicare reserve days, since Medicaid is a program of last resort which only complements (rather than duplicates) Medicare coverage for a dually entitled individual.

### III. *Summary Judgment*

A Court may grant the extraordinary remedy of summary judgment only when it is clear both that no genuine issue of material fact remains to be resolved at trial and that the movant is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. In deciding the motion, the Court is not to resolve disputed issues of fact, but rather, while resolving ambiguities and drawing reasonable inferences against the moving party, to assess whether material factual issues remain for the trier of fact. *Knight v. U.S. Fire Insurance Co.,* 804 F.2d 9, 11 (2d Cir.1986) (citing *Anderson v. Liberty Lobby, Inc.,* —— U.S. ——, 106 S.Ct. 2505, 2509–11, 91 L.Ed.2d 202 (1986)). While the party seeking summary judgment bears the burden of demonstrating the lack of material factual issues in dispute, *Schering Corp. v. Home Insurance Co.,* 712 F.2d 4, 9 (2d Cir.1983), "[t]he mere existence of factual issues—where those issues are not material to the claims before the court—will not suffice to defeat a motion for summary judgment." *Quarles v. General Motors Corp.,* 758 F.2d 839, 340 (2d Cir.1985) (per curiam).

While the movant faces a difficult burden to succeed, motions for summary judgment, properly employed, permit a Court to terminate frivolous claims and to concentrate its resources on meritorious litigation. *Knight v. U.S. Fire Insurance, supra,* 804 F.2d at 12. The motion then

> is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed "to secure the just, speedy and inexpensive determination of every action." Fed.Rule Civ. Proc.... Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of person opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial that the claims and defenses have no factual basis.

*Celotex Corp. v. Catrett,* —— U.S. ——, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986).

This action is appropriate for summary judgment because there are no material factual issues to be resolved. The defendant has conceded that at least one of the claims cited by plaintiff was denied reimbursement for skilled nursing care at the initial determination and on reconsideration. Plaintiff then filed a request for administrative hearing, asserting rights as subrogee of the beneficiary. Defendant does not contest the timeliness of the request—the issue is the plaintiffs' asserted right to act as subrogee. Defendant dismissed the request for hearing because plaintiffs were not a validly appointed representative of the beneficiary. Plaintiffs then requested an Appeals Council review of the dismissal. Defendant agrees that an NYSDSS employee can serve as the beneficiary's representative when the beneficiary or the beneficiary's next of kin (in cases of incompetency) has completed a valid appointment of representative form. However, NYSDSS seeks to avoid the paperwork involved in obtaining appropriately signed appointments of representatives by advancing its subrogation rights under state law.[13] Defendant contends, and this Court agrees, that an adoption of plaintiffs' subrogation theory would violate the precisely drawn appeals provisions of 42 U.S.C. § 1395ff and be inconsistent with Congressional intent in enacting 42 U.S.C. § 1396a(a)(25).

As previously discussed in the jurisdiction section of this opinion, the Supreme Court has held that the language of 42 U.S.C. § 1395ff(b) was precisely drawn to limit the availability of judicial review. *Erika, supra,* 456 U.S. at 207, 102 S.Ct. at 1653. In that section, this Court discussed the precise language of the statute that

---

**13.** Plaintiff asserts that it is difficult and sometimes impossible to obtain an appointment of representative form signed by the beneficiary or next of kin. In some instances, the beneficiary may be incompetent or deceased, and next of kin may be difficult to locate or nonexistent. Defendant notes that the beneficiary also has the right to refuse to appoint an NYSDSS employee as his representative, since appointment of a representative for Medicare purposes is a voluntary action.

limited access to judicial review of the amount of benefits under Part A to an action brought by the individual (or on behalf of the individual by the individual's duly appointed representative). The language of this provision is similarly explicit with regard to the parties who are entitled to an administrative hearing on adverse reconsideration decisions. The specific language of 42 U.S.C. § 1395ff(b) granting the right to a hearing is as follows:

(b) Appeal by individuals

(1) Any individual dissatisfied with any determination under subsection (a) of this section as to— ...

(C) the amount of benefits under part A or part B of this subchapter (including a determination where such amount is determined to be zero), ...

(D) any other denial ... of a claim for benefits under part A ... shall be entitled to a hearing thereon by the Secretary to the same extent as is provided in section 405(b) of this title....

(2) Notwithstanding paragraph (1)(C), in the case of a claim arising—

(A) under part A, a hearing shall not be available to an individual under paragraph (1)(C) if the amount in controversy is less than $100....

Plainly, the language of 42 U.S.C. § 1395ff(b) and accompanying regulations limits administrative appeals to individual beneficiaries or duly appointed representatives acting on behalf of beneficiaries. A state agency acting as subrogee is asserting its own rights that can conflict with the interest of the Medicare beneficiary.

Plaintiffs' contention that 42 U.S.C. § 1396a(a)(25) requires it to pursue Medicare liability through administrative appeals is, in effect, an argument that 42 U.S.C. § 1396a(a)(25) amends 42 U.S.C. § 1395ff(b) by implication. In view of the legislative intent behind 42 U.S.C. § 1396a(a)(25), this Court finds plaintiffs' subrogation argument without merit. Plaintiffs' argument would be particularly difficult to accept in view of the strong judicial policy disfavoring amendment of a statute by implication. *St. Martin Evangelical Lutheran Church v. South Dakota,* 451 U.S. 772, 787–88, 101 S.Ct. 2142, 2150–51, 68 L.Ed.2d 612 (1981); *Regan v. Ross,* 691 F.2d 81 (2d Cir.1982).

42 U.S.C. § 1396a(a)(25) has been amended since this action was instituted; however, the language at issue in this case remains virtually unchanged. The original third party liability provision stated:

1396a(a) A State plan for medical assistance must— ...

(25) provide (A) that the State or local agency administering such plan *will take all reasonable measures to ascertain the legal liability of third parties to pay for care and services (available under the plan)* arising out of injury, disease, or disability, (B) that where the State or local agency knows that a third party has such a legal liability such agency will treat such legal liability as a resource of the individual on whose behalf the care and services are made available for purposes of paragraph (17)(B), and (C) that in any case where such a legal liability is found to exist after medical assistance has been made available on behalf of the individual and where the amount of reimbursement the State can reasonably expect to recover exceeds the costs of such recovery, the State or local agency will seek reimbursement for such assistance to the extent of such legal liability;

Social Security Amendments of 1967, Pub.L. No. 90–248, 81 Stat. 821, codified at 42 U.S.C. § 1396a(a)(25) (1983) (emphasis added).

Congress amended this provision in the consolidated Omnibus Budget Reconciliation Act of 1985, Pub.L. No. 99–272, so that 42 U.S.C. § 1396a(a)(25) now states:

§ 1396a(a) A State plan for medical assistance must—

(25) provide—

(A) that the State or local agency administering such plan *will take all reasonable measures to ascertain the legal liability of third parties (including health insurers) to pay for care and services available under the plan,* including—

(i) the collection of sufficient information (as specified by the Secretary in

regulations) to enable the State to pursue claims against such third parties, with such information being collected at the time of any determination or redetermination of eligibility for medical assistance, and

(ii) the submission to the Secretary of a plan (subject to approval by the Secretary) for pursuing claims against such third parties, which plan shall—

(I) be integrated with, and be monitored as part of the Secretary's review of, the State's mechanized claims processing and information retrieval system under section 1396b(r) of this title, and (II) be subject to the provisions of section 1396b(r) of this title, relating to reductions in Federal payments for failure to meet conditions of approval, but shall not be subject to any other financial penalty as a result of any other monitoring, quality control, or auditing requirements;

(B) that in any case where such a legal liability is found to exist after medical assistance has been made available on behalf of the individual and where the amount of reimbursement the State can reasonably expect to recover exceeds the costs of such recovery, the State or local agency will seek reimbursement for such assistance to the extent of such legal liability;

(C) that in the case of an individual who is entitled to medical assistance under the State plan with respect to a service for which a third party is liable for payment, the person furnishing the service may not seek to collect from the individual (or any financially responsible relative or representative of that individual) payment of an amount for that service (i) if the total of the amount of the liabilities of third parties for that service is at least equal to the amount payable for that service under the plan (disregarding section 1396o of this title), or (ii) in an amount which exceeds the lesser of (I) the amount which may be collected under section 1396o of this title, or (II) the amount by which the amount payable for that service under the plan (disregarding section 1396o of this title), exceeds the total of the amount of the liabilities of third parties for that service;

(D) that a person who furnishes services and is participating under the plan may not refuse to furnish services to an individual (who is entitled to have payment made under the plan for the services the person furnishes) because of a third party's potential liability for payment for the service;

(E) that in the case of prenatal or preventive pediatric care (including early and periodic screening and diagnosis services under section 1396d(a)(4)(B) of this title) covered under the State plan, the State shall—

(i) make payment for such service in accordance with the usual payment schedule under such plan for such services without regard to the liability of a third party for payment for such services; and

(ii) seek reimbursement from such third party in accordance with subparagraph (B); and

(F) that in the case of any services covered under such plan which are provided to an individual on whose behalf child support enforcement is being carried out by the State agency under part D of subchapter IV of this chapter; the State shall—

(i) make payment for such service in accordance with the usual payment schedule under such plan for such services without regard to any third-party liability for payment for such services, if such third-party liability is derived (through insurance or otherwise) from the parent whose obligation to pay support is being enforced by such agency, if payment has not been made by such third party within 30 days after such services are furnished; and

(ii) seek reimbursement from such third party in accordance with subparagraph (B);

42 U.S.C.A. § 1396a(a)(25) (1983 and 1987 Supp.)

This Court's review of these issues of statutory construction is directed by the Supreme Court's guidelines in *Chevron, U.S.A., Inc. v. National Resources Defense Council,* 467 U.S. 837, 842–844, 104

S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984), which states:

> When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose it own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.... If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation.

■ In order that plaintiffs' construction of 42 U.S.C. § 1396a(a)(25) prevail, this Court would be required to find both (1) that Medicare is a third party for the purposes of this provision and for the purposes of 42 U.S.C. § 1396k, which provides a mechanism for implementing this provision, and (2) that NYSDSS, acting as subrogee of a dually entitled Medicare beneficiary/Medicaid recipient, would be taking "all reasonable measures to ascertain the legal liability" of a third party if it were to pursue an administrative hearing and even judicial review of a Medicare Part A determination of noncoverage of extended care services.

Defendant contends that Medicare is not a third party, for either the purposes of the third party liability provision or for the purposes of the assignment of rights provision. In view of the all-inclusive language of the third party liability provision of the statute, i.e. "third parties (including health insurers)," the description of the provision in the legislative history, and administrative interpretations of the term in regula-

tions and other official publications, defendant's assertion that Medicare is not a third party for the purposes of 42 U.S.C. § 1396a(a)(25) is implausible.

Throughout the Medicare statute itself, Congress refers to Medicare as "health insurance." 42 U.S.C. Chapter XVIII (1983 and 1987 Supp.). In the legislative history of 42 U.S.C. § 1396a(a)(25), Congress clearly stated: "Medicaid is intended to be the payor of last resort, that is, other available resources must be used before Medicaid pays...." S.Rep. No. 99–146 at 312, *reprinted in* 1986 U.S.Code Cong. & Ad. News, vol. 3A, 279. In view of the fact that Congress enacted a special provision permitting states to pay Medicare Part B premiums for Medicare-eligible Medicaid recipients, 42 U.S.C. § 1395v, Congress has clearly expressed an intent that Medicare be considered a resource to be used before Medicaid pays.

An examination of agency interpretations of the term confirms that Medicare is viewed by HHS as a "third party" for purposes of the third party liability provision. The preamble to federal implementing regulations describes a third party in the following broad terms:

> A third party is any individual, entity or program that is or may be liable to pay all or part of the expenditures for medical assistance furnished under a State plan.

50 Fed.Reg. 19227 (May 28, 1986). Medicare undeniably fits into the category of "program" under this broad definition; however, the regulations have consistently retained the prohibition against assignment of Medicare rights. 42 C.F.R. § 433.146(b) and 408.1668(a)(1).

HHS's internal written guidelines have also described Medicare as a third party resource which state agencies must pursue for reimbursement of Medicaid expenditures under 42 U.S.C. § 1396(a)(25). HHS's Medical Assistance Manual states (emphasis added):

> Sec. 6–50–20—Implementation of Regulations
>
> Section 1902(a)(25) of the Act and [42 C.F.R. 433.135] require that states take

reasonable measures to identify legally liable third parties; treat verified third party liability as a resource of the Medicaid applicant or recipient ...

Sec. 6–50–21—Definitions

A. "Third party" means an individual, institution, corporation, or public or private agency that is liable to pay all or part of the medical cost of injury, disease or disability of an applicant for or recipient of medical assistance under title XIX.

 *Examples of third party resources are:*

 1. Medicare (title XVIII)
 2. Railroad Retirement Act ...

A regional office manual transmittal also referred to Medicare as a third party resource, stating: "Hospital lifetime reserve days under Medicare (title XVIII) is an example of third party resource." HCFA Regional Office Manual, Part 6, § 1810A, *reprinted in* 1982 Commerce Clearing House Medicaid and Medicare, para. 14,749. However, an HHS internal instruction prescribing procedures for assignment of rights excepts Medicare as a third party for assignment of rights purposes. Social Security Administration Program Operations Manual System § SI 01730.001B (March 1986).

The statutory language in 42 U.S.C. § 1396a(a)(25) requiring recovery from "health insurers," the statutory language referring to Medicare as "health insurance," the description of the Medicaid program in legislative history as the "payor of last resort," and agency references to third party resources that would include Medicare are very convincing indicators that Medicare is a third party resource for the purposes of 42 U.S.C. § 1396a(a)(25). However, just as consistent, is a limitation that excludes Medicare as a third party for assignment of rights purposes.

Further examination of the language of 42 U.S.C. § 1396a(a)(25) and its legislative history indicate that the third party liability provision was adopted by Congress to re-

duce *both* federal *and* state expenditures. For this reason, NYSDSS' asserted subrogation right to pursue hearings and judicial review of disputed Medicare determinations would be inconsistent with the legislative intent of the provision.

NYSDSS contends that 42 U.S.C. § 1396a(a)(25) requires it to pursue reimbursement from the Medicare program by requesting an administrative hearing whenever (1) HHS denies a reconsideration involving reimbursement for skilled nursing care received by a dually entitled Medicare/Medicaid recipient and (2) NYSDSS staff determine that the care received was skilled nursing care covered by Medicare rather than noncovered custodial care. Assuming NYSDSS staff's assessments of the care provided were correct (and HHS' fiscal intermediary's assessments were consequently incorrect), NYSDSS would, presumably, prevail at the hearing, and the Medicaid program would receive full reimbursement of the funds expended for the care. Approximately half of these recovered Medicaid funds would be retained by NYSDSS, with the remaining half returned to HHS to reimburse federal Medicaid program expenditures. Whether or not NYSDSS staff's assessments of the care provided were correct, approximately half of the *costs* of pursuing the administrative hearing would be borne by NYSDSS, with the remainder borne by the federal government. In addition, all of the *costs* of conducting the administrative hearing would be borne by the federal government.[14]

The language of 42 U.S.C. § 1396a(a)(25) is not nearly so absolute in its mandate to states to pursue third parties as NYSDSS would have this Court believe. 42 U.S.C. § 1396a(a)(25) provides that the State agency administering the Medicaid plan "will take all reasonable measures to ascertain the legal liabilities of third parties." Neither the statute nor the legislative history provides an explicit definition for the term "reasonable measures;" however, the statutory scheme does indicate that much of

---

**14.** Pursuing NYSDSS' reasoning, NYSDSS, and every other Medicaid state agency, would also be required to pursue an administrative hearing in *any* case where Medicare denial of coverage resulted in Medicaid payment for the medical

care. Further, NYSDSS, and every other state agency, would conceivably also be required to seek judicial review of certain adverse hearing determinations, with the federal government underwriting half of the state's costs.

Congress' concern for "reasonable measures" was, in fact, related to the cost-effectiveness of the measures. 42 U.S.C. § 1396a(a)(25)(B) provides that a state agency will seek recovery "where the amount of reimbursement the state can reasonably expect to recover exceeds the costs of such recovery." Since 42 U.S.C. § 1396b(d)(2) requires approximately half of all recoupments from third parties to be returned to the federal government, the measure of cost effectiveness is obviously intended to benefit both the federal government and the state.[15] Congress clearly did not intend to reduce state Medicaid expenditures without comparable federal recoupment and especially not at federal expense.

The legislative history clearly supports this interpretation. 42 U.S.C. § 1396a(a)(25) was originally enacted as part of the Social Security Amendments of 1967, Pub.L. No. 90–248, § 229, 81 Stat. 821. The Senate Finance Committee Report indicates that the intent of the original provision was to realize both state and federal savings:

> It is obvious that many people need medical care because of an accident or illness for which someone else has fiscal liability; for example, a health insurer or a party who is determined by a court to have legal liability. In order to make

certain that the State *and* the Federal Governments will receive proper reimbursement for medical assistance paid to an eligible person when such third-party liability exists, a new requirement would be included in title XIX. Under this provision, the State or local agency would have to take all reasonable measures to ascertain the legal liabilities of third parties to pay for covered services. Where the legal liability is known it would be treated as a resource of the recipient. In addition, if medical assistance is granted and legal liability of a third party is established later, the State or local agency must seek reimbursement from such party. *The Federal Government would of course, recover its share of any reimbursement received.* (emphasis added)

S.Rep. No. 744, 90 Cong., 1st Sess., *reprinted in* 1967 U.S.Code Cong. and Ad. News, 2834, 3022.

Subsequent legislation amending and elaborating on the original 42 U.S.C. § 1396a(a)(25) indicates that Congress has been increasingly concerned with reducing federal expenditures. In 1977, Congress added 42 U.S.C. § 1396k, a provision permitting states to require individuals to assign their rights to payment for medical care as a condition of Medicaid eligibility. Pub.L. No. 95–124, § 11(b), 91 Stat. 1196.[16]

---

**15.** 42 U.S.C. § 1396b(d)(2) provides, in pertinent part:

(2)(A) The Secretary shall then pay to the State, in such installments as he may determine, the amount so estimated, reduced or increased to the extent of any overpayment or underpayment which the Secretary determines was made under this section to such State for any prior quarter and with respect to which adjustment has not already been made under this subsection.

(B) Expenditures for which payments were made to the State under subsection (a) of this section shall be treated as an overpayment to the extent that the State or local agency administering such plan has been reimbursed for such expenditures by a third party pursuant to the provisions of its plan in compliance with section 1396a(a)(25) of this title.

(C) For purposes of this subsection, when an overpayment is discovered, which was made by a State to a person or other entity, the State shall have a period of 60 days in which to recover or attempt to recover such overpayment before adjustment is made in the Federal payment to such State on account of such overpayment. Except as otherwise pro-

vided in subparagraph (D), the adjustment in the Federal payment shall be made at the end of the 60 days, whether or not recovery was made. ...

**16.** Originally, 42 U.S.C. § 1396k stated:

(a) For the purpose of assisting in the collection of medical support payments and other payments for medical care owed to recipients of medical assistance under the State plan approved under this subchapter, a State plan for medical assistance may—

(1) provide that, as a condition of eligibility for medical assistance under the State plan to an individual who has the legal capacity to execute an assignment for himself, the individual is required—

(A) to assign the State any rights, of the individual or of any other person who is eligible for medical assistance under this subchapter and on whose behalf the individual has the legal authority to execute an assignment of such rights, to support (specified as support for the purpose of medical care by a court or administrative order) and to payment for medical care from any third party; and

In 1984, Congress made a Medicaid applicant's or recipient's assignment of rights to medical benefits a mandatory condition of Medicaid eligibility. Pub.L. No. 98–369, Title III, § 2367(b), 98 Stat. 1109, codified at 42 U.S.C. § 1396k (1983 and 1987 Supp.). 42 U.S.C. § 1396k(b) specifically requires States to use third party resources collected pursuant to an assignment of rights for "reimbursement of the Federal Government to the extent of its participation in the financing" of medical assistance provided by Medicaid. This provision emphasizes that third party liability recoveries are to result in federal as well as state savings.

42 U.S.C. § 1396b(*o*) places the emphasis of third party liability squarely on federal savings. It ensures that federal savings will be realized even if state savings are not. It provides that the federal government will reduce its medical assistance payments to a state even if the state has *not* recovered from a third party private insurer if the laws of the state permit an insurer to limit or award its obligations to an insured person because he is eligible for or receives Medicaid.

Given that Congress' intent in enacting 42 U.S.C. § 1396a(a)(25) was to reduce both federal and state Medicaid expenditures, the construction of the statute which NYSDSS urges on this Court would be inconsistent with 42 U.S.C. § 1396a(a)(25). Subrogation of Medicaid rights effected automatically by state statute would result in an increase in administrative hearings and civil litigation against the federal government, both of which would be financed in part by federal funds. As such, the primary purpose of such hearings and litigation would be to recoup state funds at federal expense, a purpose contrary to the intent of 42 U.S.C. § 1396a(a)(25).[17]

## CONCLUSION

The current HHS policy that permits dually entitled Medicare beneficiaries/Medicaid recipients to appoint employees of NYSDSS as representatives permits the state agency adequate access to administrative hearings. Consequently, 42 C.F.R. § 433.146(b), which prohibits the assignment of rights to Medicare benefits as a condition of Medicaid eligibility, is con-

(B) to cooperate with the State (i) in establishing the paternity of such person (referred to in subparagraph (A)) if the person is a child born out of wedlock, and (ii) in obtaining support and payments (described in subparagraph (A)) for himself and for such person, unless (in either case) the individual is found to have good cause for refusing to cooperate as determined by the State agency in accordance with standards prescribed by the Secretary, which standards shall take into consideration the best interests of the individuals involved; and

(2) provide for entering into cooperative arrangements (including financial arrangements), with any appropriate agency of any State (including, with respect to the enforcement and collection of rights of payment for medical care by or through a parent, with a State's agency established or designated under section 654(3) of this title) and with appropriate courts and law enforcement officials, to assist the agency or agencies administering the State plan with respect to (A) the enforcement and collection of rights to support or payment assigned under this section and (B) any other matters of common concern.

(b) Such part of any amount collected by the State under an assignment made under the provisions of this section shall be retained by the State as is necessary to reimburse it for medical assistance payments made on behalf of an indi-

vidual with respect to whom such assignment was executed (with appropriate reimbursement of the Federal Government to the extent of its participation in the financing of such medical assistance), and the remainder of such amount collected shall be paid to such individual.

**17.** Even if this Court did not find that Congressional intent specifically supported (1) defendant's interpretation of 42 U.S.C. § 1396k so as to exclude Medicare from the mandatory assignment of rights provision and (2) defendant's interpretation of the third party liability provision so that "reasonable" is equated to cost effective for both the federal government and state government, this Court would alternatively find that the provisions were ambiguous. The Court would, therefore, conclude that Congress had delegated interpretation of the term "reasonable" in the third party liability provision and, consequently, the term "third parties" in the implementing assignment of rights provision to agency discretion. Since both interpretations are permissible interpretations, which are consistent with the general purpose of the third party liability and assignment of rights provisions, this Court would be required to uphold the agency interpretations as valid. *See, Udall v. Tallman,* 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965); *Chevron, U.S.A., Inc. v. National Resources Defense Council,* 467 U.S. 837, 843, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984).

sistent with 42 U.S.C. §§ 1396a(a)(25) and 1396k. Accordingly, defendant's motion for summary judgment is granted and the complaint is dismissed.

It is so ordered.