**GOOD SAMARITAN HOSPITAL REGIONAL MEDICAL CENTER, Long Island College Hospital and Northern Westchester Hospital Center, Plaintiffs,**

v.

**Donna E. SHALALA, in her official capacity as Secretary or Health and Human Services, and Empire Blue Cross Blue Shield, Defendants.**

No. 92 Civ. 8726 (WCC).

United States District Court,
S.D. New York.

Aug. 3, 1995.

Garfunkel, Wild & Travis, P.C., Great Neck, NY (Jordy Rabinozitz, Fredrick I. Miller, of counsel), for plaintiffs.

Mary Jo White, U.S. Atty., S.D. New York, New York City (Aimee B. Wolfson, Asst. U.S. Atty., of counsel), for defendants.

## OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge:

Plaintiffs Good Samaritan Hospital Regional Medical Center ("Good Samaritan"), Long Island College Hospital ("LICH"), and Northern Westchester Hospital Center ("Northern Westchester") bring this action against Donna E. Shalala, Secretary of the Department of Health and Human Services (the "Secretary"), in her official capacity, and Empire Blue Cross Blue Shield ("Empire"), for a finding that they are due additional funds under the Medicare Program for costs that they incurred in expanding, renovating, and converting their hospitals in the early 1980s. Plaintiffs seek to reverse a finding by the Provider Reimbursement and Review Board (the "PRRB" or "the Board") that it was without jurisdiction to hear an appeal from Empire's decisions not to reopen plain- tiffs' cost reports for the years in question, to order Empire to reopen the cost reports, and to order Empire to include reimbursement for the above expenditures incurred by the Hospitals in its Notice of Program Reimbursements for the years in question. The parties have cross-moved under Rule 56(c), Fed.R.Civ.P., for summary judgement. In addition, defendants have moved to dismiss all but plaintiffs' claims seeking to overturn the PRRB's decision that is was without jurisdiction under Rule 12(b)(1), Fed.R.Civ.P., for lack of subject matter jurisdiction. For the reasons stated below, we deny plaintiffs' motion and grant defendants' motions.

## I. BACKGROUND

### A. The Medicare Statutory Framework

This action arises under Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395–1395ccc (the "Medicare statute"), which establishes Medicare health insurance for the elderly and disabled (the "Medicare Program" or the "Program"). A complex regulatory scheme governs health care reimbursement under the Program, involving hundreds of statutes and regulations, a rough description of which is necessary to highlight the issues in this case.

The Program is divided into two main parts: Part A, which establishes a reimbursement system for inpatient institutional services, post hospital extended care services, home health services, and hospice care, id. at §§ 1395c–1395i–4; and Part B, which establishes a reimbursement system for physicians', outpatient, and other related services. Id. at §§ 1395j–1395w–4. Historically, the Program provided reimbursement to hospitals operating under Part A for their "reasonable cost" of furnishing the covered services to Medicare beneficiaries, or the hospital's customary charge for a particular service, whichever was lower. See id. at § 1395f(b)(1).

Subsequent to October 1, 1983, however, Congress changed administration of the Program to the Prospective Payment System ("PPS"), which reimbursed health care providers for their treatment of beneficiaries on the basis of prospectively determined nation-

al and regional rates, rather than reasonable operating costs of each specific institution. To ease hospitals' adjustment to PPS, Congress designed a four-year transition period (the "Transition Period"), during which a hospital's reimbursement would be a function of both its particular past operating costs—the "hospital specific portion" ("HSP")—and its PPS payment amount. 42 U.S.C. § 1395ww(d). The HSP element of the formula was derived from an estimate of the hospital's Medicare Part A allowable inpatient operating costs for the twelve-month-or-longer cost-reporting period ending on or after September 30, 1982 and before September 30, 1983 (the "Base Year"). *Id.* at § 1395ww(b)(3)(A)(i); 42 C.F.R. § 412.71(a)(1) (1994). Over the Transition Period, commencing on January 1, 1984 and ending on February 21, 1988, the reimbursement amount was based increasingly on PPS, until, finally, the HSP component was completely phased out.

To receive reimbursement under the Program, a provider must file an annual cost report with its fiscal intermediary, an entity with which the Secretary contracts to provide various auditing and reimbursement functions in administering the Program, detailing the services rendered to Medicare beneficiaries during the year. 42 C.F.R. § 413.20 (1994). After analyzing the submitted report, the intermediary issues a "notice of program reimbursement" (the "NPR"), delineating the allowed and disallowed charges and setting the amount of Medicare payment due each hospital for that fiscal year. 42 C.F.R. § 405.1803 (1994).

There are two methods a provider may follow in seeking to alter its NPR once it is issued by its intermediary, both of which are of central importance to this case. First, if a provider is dissatisfied with a "final determination of the organization serving as its fiscal intermediary," it may file an appeal with the Provider Reimbursement Review Board (the "PRRB" or the "Board") within 180 days. 42 U.S.C. § 1395oo (a)(1). The Board, subject to potential review by the Secretary, may either affirm, modify, or reverse the decision of the intermediary. *Id.* at § 1395oo (d).

Thereafter, the provider may seek judicial review of any such PRRB decision, or any affirmance, reversal or modification of such decision by the Secretary, by commencing a civil action within 60 days of the decision. *Id.* at § 1395oo (f)(1).

In addition to the above avenue, the Secretary has promulgated reopening regulations whereby a determination of an intermediary may be reconsidered by such intermediary on a motion by a provider affected by such determination made within three years of the date that it received notice of the determination. 42 C.F.R. § 405.1885(a) (1994). The regulation confines jurisdiction to consider a motion to reopen to the "administrative body that rendered the last determination or decision." *Id.* at § 405.1885(c). As explored more fully below, the Secretary has interpreted that jurisdictional restriction as preventing PRRB review of an intermediary's denial of a motion to reopen.

## B. The Parties

■ Plaintiffs, three hospitals in the New York City area (the "Hospitals"), are all "providers of services" under 42 U.S.C. § 1395x(u) who have entered into "provider agreements" with the Secretary pursuant to 42 U.S.C. § 1395cc, entitling them to receive payment under Part A of the Medicare Program for hospital services that they provide to eligible Medicare beneficiaries. From 1983 through 1985, the State of New York engaged in an experimental Medicare reimbursement program which exempted New York hospitals, including plaintiffs, from the statutory Medicare reimbursement scheme while the experiment was in effect. When the experimental program was terminated, however, plaintiffs entered PPS, two years into the Transition Period described above, and thereafter submitted their annual cost reports to Empire Blue Cross Blue Shield ("Empire"), their designated fiscal intermediary, for audit in accordance with the Medicare statute, regulations, and the Medicare Provider Reimbursement Manual (the "PRM").[1] Empire then issued to each of the Hospitals their respective, annual NPRs.

1. The PRM is an instruction manual promulgat- ed by the Health Care Financing Administration

Prior to their entry into PPS, each of the Hospitals had received separate approval from the New York State Department of Health to undertake various construction, renovation, and conversion projects. These projects allegedly increased the annual operating costs of Good Samaritan, LICH, and Northern Westchester by $22,415,044, $31,-310,010, and $10,782,000, respectively. However, because these projects were not completed until after September 30, 1983, the increased operating costs were not reflected in the HSP element of their PPS payments during the Transition Period, which is based on a twelve-month operating cost period ending prior to that date (the "Base Year"). Therefore, their respective NPRs during the Transition Period did not reflect these increased costs.

### C. Procedural History

In light of this anomaly, although not appealing their NPRs to the PRRB directly, the Hospitals each timely moved before Empire to reopen its consideration of their cost reports for one or more of the 1986, 1987, and 1988 fiscal years under 42 C.F.R. § 405.1885.[2] Arguing that their increased costs constituted "extraordinary circumstances ... [which] create a distortion in the increase in costs for a cost reporting period (including any distortion in the costs for the

base period against which such increase is measured)" under 42 U.S.C. § 1395ww(b)(4)(A), they asserted that Empire was required by that statute to adjust their respective HSP figures accordingly (the "TEFRA Adjustment").[3]

Empire denied each of plaintiffs' petitions for one or more of the following reasons: the TEFRA Adjustment does not apply to PPS hospitals, 42 C.F.R. § 412.71(d) mandates that the intermediary's estimates of base-year cost are final and may not be changed after October 1, 1983, except as provided in 42 C.F.R. § 412.72, and/or 42 C.F.R. § 412.71 mandates that the intermediary may not change the base-year to include costs incurred after September 30, 1983. Within 180 days of each adverse ruling, the Hospitals appealed their respective denials to the PRRB. In each case, the PRRB determined that, based on 42 C.F.R. § 405.1885(c), it did not have jurisdiction to review Empire's denials of the motions to reopen.

Thereafter, plaintiffs timely initiated the instant suit, seeking review of the PRRB's refusal to exercise its jurisdiction and Empire's refusal to reopen the cost reports to institute the requested adjustments. They petition the Court to set aside the PRRB's decisions; to remand the cases to the PRRB for hearings on the merits of plaintiffs' re-

(the "HCFA"), the arm of the Department of Health and Human Services (the "DHHS") responsible for administering much of the Medicare Program, for the benefit of those operating under and administering the Program. Although these instructions do not have the force of law, the Secretary's interpretations of the regulations, as embodied in the PRM, are entitled to deference. *St. Mary's Hosp. of Troy v. Blue Cross and Blue Shield Ass'n/Blue Cross and Blue Shield of Greater New York*, 788 F.2d 888, 890 (2d Cir. 1986). Moreover, an intermediary is required to follow the instructions as outlined in their agreements with the Secretary. *See* 42 C.F.R. § 421.100(h).

2. Good Samaritan petitioned to reopen its 1986 and 1987 NPRs, dated December 1, 1988 and May 1, 1990, respectively, on November 27, 1991 and March 18, 1993, respectively. For these fiscal years, Good Samaritan claims that it was underpaid by approximately $4,000,000. LICH petitioned to reopen its 1986 NPR, dated February 1, 1989, on January ·30, 1992, and its 1987 and 1988 NPRs, dated March 20, 1990 and October 22, 1990, respectively, on March 18, 1993. LICH claims that it was underpaid by approxi-

mately $1,500,000. Northern Westchester petitioned to reopen its 1987 NPR, dated June 29, 1989, on June 25, 1992. It claims that it was underpaid for the 1987 fiscal year by approximately $466,000.

3. In 1982, Congress enacted the Tax Equity and Fiscal Responsibility Act ("TEFRA") to curb the rate of growth of the Medicare Program. This act, while leaving the basic retrospective, "reasonable cost" method of reimbursement described above in place, imposed a limit on the rate of increase of Part A reimbursement. 42 U.S.C. § 1395ww(b). At the same time, TEFRA allowed the Secretary to provide exceptions to the limit under § 1395ww(b)(4)(A) ("TEFRA Adjustments"). Although in 1983 PPS replaced the "reasonable cost" method as amended by TEFRA, the HSP element utilized during the PPS Transition Period is calculated with reference to the TEFRA rate of increase (§ 1395ww(b)(3)(A)). Therefore, plaintiffs assert that the TEFRA Adjustment (§ 1395ww(b)(4)(A)) also applies to the HSP element under PPS.

opening requests; to declare the reopening regulations promulgated by the Secretary and accompanying instructions in the PRM invalid; to declare the reopening regulation and applicable PRM provisions invalid to the extent that they grant Empire an unfettered right to decide whether to reopen their cost reports; to direct Empire to reopen their cost reports and recalculate their reimbursement rates in accordance with their TEFRA Adjustments; and to order the Secretary to pay plaintiffs' attorneys' fees, costs, and expenses pursuant to 5 U.S.C. § 504.

The parties have each cross-moved for summary judgment pursuant to Rule 56(c), Fed.R.Civ.P.[4] In addition, defendants have moved to dismiss the action in part under Rule 12(b)(1), Fed.R.Civ.P., for lack of subject matter jurisdiction. Defendants claim 1) that our jurisdiction is limited to review of the PRRB's determination that it did not have jurisdiction to review Empire's denial of plaintiffs' motions to reopen their cost reports, 2) that the PRRB's determinations were proper as a matter of law in light of 42 C.F.R. § 405.1885(c), and 3) that even if we consider the merits of Empire's denials of plaintiffs' petitions, they were proper as a matter of law because the TEFRA Adjustment provision is inapplicable to PPS hospitals.

Pursuant to their motion, plaintiffs claim 1) that Empire's determinations not to reopen their cost reports were "final determinations" under 42 U.S.C. § 1395oo (a) and thus properly appealable to the PRRB, notwithstanding regulations and PRM provisions to the contrary, and 2) that Empire should have reopened their cost reports and incorporated their TEFRA Adjustments.

## II. DISCUSSION

### A. The PRRB Decisions

Defendants apparently do not dispute our jurisdiction to review the PRRB's decisions disavowing its jurisdiction to review Empire's reopening denials. See Edgewater Hosp., Inc. v. Bowen, 857 F.2d 1123, 1130–31, modi-

fied, 866 F.2d 228 (7th Cir.1989); Binghamton Gen. Hosp. v. Shalala, 856 F.Supp. 786, 793 (S.D.N.Y.1994). Indeed, § 1395oo (f)(1) grants to providers the right:

> to obtain judicial review of any final decision of the Board ... by a civil action commenced within 60 days of the date on which notice of any final decision by the Board ... is received. * * * Such action shall be brought in the district court of the United States for the judicial district in which the provider is located....

Therefore, we will address defendants Rule 12(b)(1) motion only as it applies to plaintiffs' reopening and reimbursement claims below.

Summary judgment is appropriate only when there are no genuine issues of material fact for trial and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). Since the instant controversy hinges solely on issues of statutory construction, issues of law for the Court to decide, we agree with both parties that summary judgment is the appropriate avenue for disposing of this matter.

■ In the instant case, the PRRB construed 42 C.F.R. § 405.1885(c) as specifically restricting its jurisdiction to review a fiscal intermediary's denial of a provider's motion to reopen its cost report, notwithstanding the general appeal provisions of 42 U.S.C. § 1395oo (a). Our review of those determinations falls under the standards set forth in the Administrative Procedure Act, which provide in part that a party seeking to upset agency action must demonstrate that the action was arbitrary, capricious, an abuse of discretion, or otherwise contrary to law. 5 U.S.C. § 706(2)(A). Under this standard, we must accord an agency considerable deference in its interpretation of the statutes it is entrusted to administer. Good Samaritan Hosp. v. Shalala, —— U.S. ——, ——, 113 S.Ct. 2151, 2159, 124 L.Ed.2d 368 (1993). This is particularly the case in the presence of a very complex and intricate administrative program such as Medicare. Cf. DeJesus v. Perales, 770 F.2d 316, 327 (2d Cir.1985), cert. denied, 478 U.S. 1007, 106 S.Ct. 3301, 92

---

4. Defendants have actually moved under 12(b)(6) to dismiss the action for failing to state a claim on which relief can be granted, or, in the alterna-

tive, for summary judgment. In the face of plaintiffs' cross-motion, we will also treat it as a motion for summary judgment.

L.Ed.2d 715 (1986) (applying this principle to Medicaid statute).

■ Our deference to agency action is not without limitation, however. If Congress has explicitly spoken on an issue, we, like the agency, are bound to follow the congressional directive. Therefore, when a court reviews agency action, it is faced with two questions: 1) whether Congress addressed the issue in question directly; and if not, 2) whether the agency's resolution of the issue was based on a valid construction of the statute at issue in light of the deferential standard articulated above. *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984). Under this review scheme, our starting place for evaluating the PRRB's decision is the express language of § 1395oo (a) governing appeals from the intermediary.

*1. The Intermediary Review Statute*

Although neither the Supreme Court, nor the Second Circuit, has expressly addressed this precise issue, it is not novel within this circuit. Indeed, this Court has previously held that § 1395oo (a) does not expressly require the PRRB to exercise jurisdiction over an intermediary's denial of a motion to reopen. *Binghamton,* 856 F.Supp. at 795 (Sand, J.). In *Binghamton,* as here, the plaintiffs challenged the PRRB's determination that it was without jurisdiction to review a reopening denial by their intermediary. The Court, concluding that the most reasonable construction of the Medicare statute was "that Congress intended that denials of reopening not be considered appealable 'final determinations' under § 1395oo (a)," held that Congress had not directly addressed the precise question at issue and proceeded to defer to the Secretary's interpretation as contained in the regulations and Program instructions. *Id.*

*Binghamton* is in line with the District of Columbia Circuit, which has held that not only does § 1395oo (a) not unambiguously provide an appeal from an intermediary's decision not to reopen, but it does not provide appeals of reopening dispositions in general.[5] *HCA Health Services of Oklahoma, Inc. v. Shalala,* 27 F.3d 614, 618 (D.C.Cir. 1994). Other decisions within and by that circuit, while not extending that far, like *Binghamton* have held that § 1395oo (a) does not provide for appeals of reopening denials. *See Memorial Hosp. v. Sullivan,* 779 F.Supp. 1406, 1409 (D.D.C.1991) (*Memorial I*) (section 1395oo (a) does not govern appeals from an intermediary's decision not to reopen); *Athens Community Hosp. v. Schweiker,* 743 F.2d 1, 4 n. 4 (D.C.Cir.1984), *overruled on other grounds, Bethesda Hosp. Ass'n v. Bowen,* 485 U.S. 399, 108 S.Ct. 1255, 99 L.Ed.2d 460 (1988) (same); *St. Mary's of Nazareth Hosp. Ctr. v. Schweiker,* 741 F.2d 1447, 1449 (D.C.Cir.1984) (per curiam) (same).

The Ninth Circuit, on the other hand, has held that § 1395oo (a) expressly provides for such appeals. *State of Oregon On Behalf Of The Oregon Health Sciences Univ. v. Bowen,* 854 F.2d 346, 348–49 (9th Cir.1988). *See also Kootenai Hosp. District v. Bowen,* 650 F.Supp. 1513, 1520 (N.D.Cal.1987). Finding that an intermediary's decision not to reopen was a "final decision" within the meaning of § 1395oo (a), that court overturned the PRRB's determination that it had no jurisdiction to hear an appeal from such a decision. *State of Oregon,* 854 F.2d at 349.

In addressing whether the plain language of § 1395oo (a) provides appeals of an intermediary's decision not to reopen a cost report, we need only decide whether such decision is a "final determination ... as to the amount of total program reimbursement...." 42 U.S.C. § 1395oo (a)(1)(A)(i).[6]

5. While not specifically finding § 1395oo (a) irrelevant to appeals of all reopening dispositions, the Third Circuit has endorsed the holding that § 1395oo (a) does not unambiguously mandate the scope of permissible appeals from such dispositions. *See Albert Einstein Medical Ctr. v. Sullivan,* 830 F.Supp. 846, 849 (E.D.Pa.1992), *aff'd,* 6 F.3d 778 (3d Cir.1993). However, at least one court within that circuit has held that a reopened and revised NPR is a "separate and

distinct" final determination not falling under § 1395oo 's appeal provisions. *See Delaware County Memorial Hosp. v. Sullivan,* 836 F.Supp. 238, 245 (E.D.Pa.1991).

6. Interestingly, the Ninth Circuit in *State of Oregon,* without explanation, assumed an affirmative answer to this question. *State of Oregon,* 854 F.2d at 349. It appears that the court may have been guilty of the same casualness which is at-

If it is, then the express language of § 1395oo (a) grants the PRRB jurisdiction to review such decisions and our inquiry is finished. If it is not, however, we must turn to the implementing regulations to determine whether the Board's interpretation of those regulations in light of § 1395oo (a) was an abuse of its discretion.

█ We are mindful that the Secretary's reopening scheme is a product of the implementing regulations and, while arguably authorized,[7] was not expressly contemplated by Congress in enacting the Medicare statute; *Memorial I,* 779 F.Supp. at 1409 ("Plaintiff's 'rights' in the reopening process are defined by the agency's regulations and not by Congressional directive."); *Binghamton,* 856 F.Supp. at 793 (reopening authorized solely by the implementing regulations). Obviously, appeals from denials of reopening requests are even farther from the expressed intent of Congress. Therefore, plaintiffs' contention that an agency created "reopening right" is governed by the plain language of a statute admittedly not specifically creating that right seems somewhat strained.

█ Even apart from this fact, however, we concur in the holding of *Binghamton* that the plain meaning of § 1395oo (a)(1)(A)(i) does not compel a holding that the denial of a

motion to reopen is a "final determination . . . as to the amount of total program reimbursement." While we agree with plaintiffs that a decision not to reopen is in some sense "final," it does not, in and of itself, establish an "amount of total program reimbursement." Instead, it is a final determination that there are not grounds on which to reconsider a previous final determination as to the amount of total program reimbursement. *Staten Island Hosp. v. Sullivan,* Civ. A. No. 91–0733 (RCL), 1992 WL 675952, at *5 n. 6 (D.D.C. March 31, 1992). As this Court previously stated:

> [A decision not to reopen] is akin to the decision of a judicial panel or en banc court to deny rehearing, and no one supposes that that denial, as opposed to the panel opinion, is an appealable action.

*Binghamton,* 856 F.Supp. at 794 (citation omitted).

Although this distinction might appear technical, a holding that such denial "establishes the amount of total program reimbursement," as did the Ninth Circuit, would allow a provider to challenge not only the denial on appeal to the PRRB, but the underlying reimbursement amount, effectively gutting the 180–day appeal limitation expressly provided by § 1395oo (a)(3).[8] Successive

---

tributed to the *Athens* court when it rejected the *Athens* court's reading of the statute. *Id.* at 349 n. 5 (bemoaning the D.C. Circuit's lack of reasoning).

7. The plaintiffs raise the question of whether the reopening regulations are, in fact, authorized by the Medicare statute. Plaintiffs' Mem. of Law in Support, at 3–4. The Secretary cited 42 U.S.C. §§ 1395oo, 1395x(v)(1) (authorizing Secretary to make suitable retroactive corrective adjustments to reimbursement amount), 1302 (authorizing Secretary to promulgate implementing regulations), and 1395hh (authorizing Secretary to promulgate implementing regulations under Medicare statute), in support of her authority to promulgate the reopening regulations. 39 Fed.Reg. 34,514 (1974) (to be codified at 42 C.F.R. pt. 405) (proposed Oct. 26, 1974). If no such authority resides in the Secretary, then plaintiffs' suit would be moot since it is based entirely on the Secretary's reopening procedure. Therefore, we assume, without deciding, that the reopening regulations stem from a valid exercise of the Secretary's rulemaking power.

8. This is even more a possibility in light of the Supreme Court's pronouncement in *Bethesda*

*Hosp. Ass'n v. Bowen,* 485 U.S. 399, 404–405, 108 S.Ct. 1255, 1258–59, 99 L.Ed.2d 460 (1988), wherein the Court ruled that, in appeals pursuant to § 1395oo (a), providers may raise arguments before the PRRB not raised before the intermediary as long as they are based on cost reports properly submitted to the intermediary. Under this holding, if a reopening denial constitutes a "final determination . . . as to the amount of total program reimbursement," on appeal a provider would presumably be able to attack the amount of total program reimbursement even on grounds not raised before the intermediary in seeking to reopen its decision. Such a construction would make the 180–day direct appeal route totally superfluous.

On a related note, plaintiffs argue that *Bethesda* actually mandates broadening the scope of the "final determination" requirement of § 1395oo (a)(1)(A)(i) to include reopening denials. While that case read the PRRB's jurisdiction broadly to encompass claims not argued to the intermediary, it focused on the "dissatisfied" requirement of that subsection and did not arise in a reopening context. Therefore, its application to the instant issue is strained at best.

three year reopening requests would keep a provider's cost report subject to review indefinitely. We cannot suppose, as plaintiffs would have us hold, that the plain meaning of one statutory subsection that reduces another subsection to mere surplusage is inherently unambiguous.

In support of their motion, plaintiffs argue that when read in conjunction with other statutes, § 1395oo (a) must be interpreted as granting the Board jurisdiction to review reopening denials. First, plaintiffs cite § 1395oo (g) which prevents review of certain findings of the intermediary.[9] Plaintiffs contend that by carving out specific exceptions for these two cases, Congress intended all other findings of the intermediary to be reviewable.

Plaintiffs apparently ignore the plain language of § 1395oo (a). It states that only "final determinations ... as to the amount of total program reimbursement" are reviewable by the Board. Section 1395oo (g) carves out two exceptions to that limited grant of jurisdiction. While we agree with plaintiffs that the Secretary might not be able to carve out further exceptions to the reviewability provided by § 1395oo (a), the fact remains that review of a reopening denial is not expressly provided by § 1395oo (a). Therefore, our denial of such review does not create an additional exception to § 1395oo (a)'s jurisdictional grant.

**9.** That section reads:
(1) The finding of a fiscal intermediary that no payment may be had under this subchapter for any expenses incurred for items or services furnished to an individual because such items or services are listed in section 1395y of this title shall not be reviewed by the Board, or by any court pursuant to an action brought under subsection (f) of this section.
(2) The determinations and other decisions described in section 1395ww(d)(7) of this title shall not be reviewed by the Board or by any court pursuant to an action brought under subsection (f) of this section or otherwise.
42 U.S.C. § 1395oo (g).

**10.** In their reply memorandum, plaintiffs cite *Bd. of Trustees of Knox County (Indiana) Hosp. v. Sullivan*, 965 F.2d 558, 563 (7th Cir.1992), *cert. denied*, — U.S. —, 113 S.Ct. 1043, 122 L.Ed.2d 353 (1993), which held that a hospital's designation by the Secretary as a rural referral center was reviewable in part because § 1395oo

Plaintiffs would have us stop reading § 1395oo (a)(1)(A)(i) after the words "final determination." Apparently, they claim that § 1395oo (g) mandates that construction.[10] However, if Congress wished to make all "final determinations" of the intermediary reviewable, they could have done so. Indeed, Congress made all "final decisions" of the Board, irrespective of what those final determinations were, subject to judicial review. 42 U.S.C. § 1395oo (f)(1). Instead, Congress provided the Board under § 1395oo (a)(1)(A)(i) with jurisdiction to review only determinations as to the amount of total program reimbursement. In interpreting § 1395oo (a)(1)(A)(i), we must "give effect, if possible, to every word Congress used." *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339, 99 S.Ct. 2326, 2331, 60 L.Ed.2d 931 (1979). A reopening denial is not a final determination of the amount of total program reimbursement.

Finally, plaintiffs argue in their reply memorandum that in light of § 1395oo (a)(1)(A)(ii),[11] the "final determination" language of § 1395oo (a)(1)(A)(i) should be read broadly to include reopening denials. In *Washington Hosp. Ctr. v. Bowen*, 795 F.2d 139 (D.C.Cir.1986), the court held that under § 1395oo (a)(1)(A)(ii) the issuance of an NPR was not a prerequisite to review of by the Board of a hospitals PPS payment. Once the intermediary had determined a hospital's HSP, the hospital could appeal to the Board pursuant to that subsection.[12] *Id.* at 148.

(g) outlined which designations were unreviewable. That case is inapposite because it did not address the jurisdiction of the Board to review the Secretary's designation under § 1395oo (a). Instead, it concerned whether, assuming the PRRB and the court had jurisdiction, the Secretary's designation was a completely discretionary determination. Moreover, this determination was an integral step in establishing "the amount of payment under subsection (b) or (d) of section 1395ww." 42 U.S.C. § 1395oo (a)(1)(A)(ii). A denial of a motion to reopen is not such a determination.

**11.** In their reply memorandum plaintiffs actually cite § 1395oo (a)(ii). Since no such provision exists, we assume that they are referring to § 1395oo (a)(1)(A)(ii).

**12.** That section reads in pertinent part:
[a hospital operating under PPS may obtain a hearing with respect to its PPS payment if

Citing this case, plaintiffs apparently argue that an "amount of total program reimbursement" is not confined to an NPR.

Whether or not this is true, it does not alter our holding that a denial of a motion to reopen is not a determination as to the amount of total program reimbursement. While under *Washington Hospital,* plaintiffs may not have had to wait until their intermediary had issued their NPRs to appeal to the Board, plaintiffs offer no explanation as to how this interpretation of § 1395*oo* (a) changes the fact that a reopening denial does not establish an amount of program reimbursement. *Washington Hospital* merely held that a final determination by the Secretary of a hospital's HSP and PPS amounts triggered appealability under § 1395*oo* (a)(1)(A)(ii). A denial of a motion to reopen does not "determine" those amounts, however.

Because in reading the plain language § 1395*oo* (a)(1)(A)(i) we cannot hold that Congress unambiguously resolved the issue before us, we must proceed to the second *Chevron* question.[13]

### 2. The Reopening Regulation

As indicated above, § 1395*oo* (a) does not mention reopening of NPRs and other intermediary determinations, but such action is authorized in the implementing regulations. *See* 42 C.F.R. §§ 405.1885–405.1889 (1994). Those regulations provide in pertinent part:

(a) A determination of an intermediary ... may be reopened with respect to findings on matters at issue in such determination or decision, by such intermediary ... on the motion of the provider affected by

such determination or decision to revise any matter in issue at any such proceedings. Any such request to reopen must be made within 3 years of the date of the notice of the intermediary.

\* \* \* \* \* \*

(c) Jurisdiction for reopening a determination or decision rests exclusively with that administrative body that rendered the last determination or decision.

42 C.F.R. § 405.1885(a), (c) (1994).

Although the regulations do not mention appealing denials of motions to reopen, they do specifically provide for review of revisions to reopened cost reports. *Id.* at § 405.1889. On the other hand, the PRM, containing the Secretary's interpretation of the regulations, specifically states that:

A refusal by the intermediary to grant a reopening requested by the provider is not appealable to the Board, pursuant to 42 C.F.R. § 405.1885(c)....

PRM § 2926.6(B)(4).

Relying on section 1885(c), the PRRB held in each of plaintiffs' appeals from the intermediary's decisions not to reopen that it was without jurisdiction to review the intermediary's actions. In reviewing that decision we must first assess whether section 1885(c), as interpreted by the PRRB, is a lawful exercise of the Secretary's rulemaking power, and, if so, whether the PRRB's interpretation of that section as barring plaintiffs' appeals was arbitrary, capricious, an abuse of discretion, or otherwise contrary to law.

In promulgating section 1885, the Secretary provided for a cost report correction

---

such provider] is dissatisfied with a final determination of the Secretary as to the amount of payment under subsection (b) or (d) of section 1395ww of this title....

42 U.S.C. § 1395*oo* (a)(1)(A)(ii).

**13.** Plaintiffs also argue that, assuming the reopening provisions are valid, the authorizing statutes do not permit the Secretary to restrict review of an intermediary's decision not to reopen. Plaintiffs specifically cite § 1395x(v)(1)(A)(ii) as mandating such a result. That subsection authorizes the Secretary to "provide for the making of suitable retroactive corrective adjustments...." First, we are not convinced that the reopening regulations are autho-

rized by that section. *HCA*, 27 F.3d at 618. Second, plaintiffs fail to explain how that section alters the meaning of a "final determination ... as to the amount of total program reimbursement" under § 1395*oo* (a), or otherwise unambiguously requires an appeal of a reopening denial. *See id.; Binghamton,* 856 F.Supp. at 795–96. To the contrary, the reopening procedures are a separate, Secretary-created corrective process to augment the statutory appeal scheme. The Secretary's decision to restrict appeals within that system, even if the system is authorized by § 1395x(v)(1)(A)(ii), does not conflict with the express intent of that subsection or the statutory appeal scheme.

scheme in addition to the statutory, direct appeal route of § 1395oo. Although courts have differed in attributing the statutory authority for the Secretary's reopening rules,[14] as we held above, § 1395oo does not expressly preclude restricting administrative review within that system, at least of an intermediary's reopening denials. Moreover, in light of her discretion in implementing the statute, we do not think that the Secretary's interpretation of the statutory scheme as not precluding such restriction is without reasonable support.

First, as *Binghamton* noted, Congress sharply limited judicial review of actions arising under the Medicare statute to those avenues expressly provided by the statute. 42 U.S.C. § 1395ii; *Binghamton*, 856 F.Supp. at 798. Since reopening denials are not expressly appealable under the statute, the Secretary's decision not to allow their review does not upset the Congressional scheme. Moreover, absent the Secretary's reopening provisions, plaintiffs would have no statutory recourse whatsoever for pursuing the relief they seek in this case. The Secretary's decision not to allow review of decisions not to reopen does not usurp any right granted to plaintiffs by the Medicare statute.

Second, as we noted above, a contrary construction by the Secretary, one requiring a review avenue for reopening denials, could allow the reopening scheme to be used to undermine the statutory 180–day limit on appeals of cost reports—especially if reopening denials are treated as decisions on "the amount of total program reimbursement due a provider" under § 1395oo (a)(1)(A)(i). *Binghamton*, 856 F.Supp. at 795; *Staten Island Hosp.*, 1992 WL 675952, at *5 n. 6; *see supra* note 8. The Secretary's decision to prevent this avenue of potential abuse is not an unreasonable interpretation of statutory intent.

Plaintiffs argue that the basic policy in favor of judicial review of agency action undermines the Secretary's construction of § 1395oo. While we agree with the policy, it is not dispositive, nor does it necessarily

render the Secretary's construction unreasonable. We must reiterate, that "a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency." *Chevron*, 467 U.S. at 844, 104 S.Ct. at 2783–84 (footnote citing cases omitted). Because § 1395oo (a) does not expressly provide for PRRB review of reopening denials, and the Secretary's construction that she may restrict the appealability of reopening denials finds reasonable support in the statute, we will not overturn section 1885.

That does not end our inquiry, however, because we must still determine whether the PRRB's interpretation of that section as barring plaintiffs' appeals finds reasonable support in the regulations. Admittedly, the reopening regulations are not models of clarity. However, although we might not have interpreted them in the same manner as the PRRB if the issue had been first presented to us, we do not think that the Board's construction is without reasonable foundation or contrary to law.

Section 1885(c) confines jurisdiction to reopen a decision to the administrative body issuing the decision. This could be interpreted in one of two ways. With a broad reading, this could mean, as the PRRB held, that a decision whether or not to grant a reopening is unreviewable. Such an interpretation seems consistent with section 1889, which provides for reviewability only of revised cost reports.

On the other hand, with a strict, or perhaps cramped, reading, section 1885(c) does not prevent the Board from exercising its jurisdiction to review an intermediary's decision not to reopen, but only from reopening the decision itself. Indeed, this is the interpretation that the Ninth Circuit in *State of Oregon* attributed to that section in overruling the PRRB's finding that section 1885(c) foreclosed their jurisdiction. *State of Oregon*, 854 F.2d at 349. However, the Board's reversal of an intermediary's denial would be, essentially, an order reopening the decision—an action the regulation jurisdictionally

---

14. We need not decide the source of the Secretary's authority. We need only examine whether

1885(c) is valid. *See supra* note 7.

reserves to the intermediary.[15] Because it would be unreasonable to assume that the regulation permits PRRB review only if it affirms the denial, we do not think that a reading of section that restricts all Board review is manifestly unreasonable. Given the latitude that the Secretary possesses in interpreting the statutes and regulations she is entrusted to administer, we must uphold the PRRB decisions.

 Our duty as a reviewing court is not to supply what we believe to be the most reasonable construction to the regulations, but to determine if the PRRB's reading is reasonable. Whether or not *State of Oregon* applied the proper deference to the PRRB's conclusions, in light of the above analysis we believe that the Board's interpretation that it was without jurisdiction was reasonable and thus we refuse to overturn it.

### B. The Intermediary's Decisions

Plaintiffs have attacked not only the Board's refusal to exercise its jurisdiction, but Empire's refusal to reopen and to include their increased operating costs incurred after September 30, 1983 in their NPRs as required by TEFRA. Before passing on their merits, in the face of defendants' motion under Rule 12(b)(1), we must determine our jurisdiction to decide these issues.

In their complaint, plaintiffs cite at various times § 1395oo (f), 28 U.S.C. § 1331, and 28 U.S.C. § 1361 as granting this court jurisdiction of the instant suit.[16] Plaintiffs' Appendix In Support, at 4. Because the complaint does not specify on which of these statutes plaintiffs rely to provide a jurisdictional basis for their claims against Empire, we will analyze each of these statutes separately below. Moreover, we note that while plaintiffs generally have the burden of demonstrating our jurisdiction to adjudicate their claims, they have not responded to defendants' jurisdictional challenges.

### 1. Section 1395oo (f)

 As noted above, section 1395oo (f)(1) grants this Court jurisdiction to review final decisions of the PRRB. In this case, the PRRB's decisions that it lacks jurisdiction are "final decisions" of the Board which trigger the right to judicial review. *Binghamton*, 856 F.Supp. at 793. However, under this section, our jurisdiction is confined to determining whether the PRRB erred in making its determinations. *Id.* It does not permit us to review the merits of plaintiffs' reopening or underlying review claims presented to Empire.

### 2. Section 1331

Section 1331 grants to district courts "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. However, Congress has specifically exempted cases arising under the Medicare statute from the broad reach of this "arising under" jurisdiction. 42 U.S.C. § 1395ii (incorporating 42 U.S.C. § 405(h) to the Medicare statute); *Heckler v. Ringer*, 466 U.S. 602, 614–17, 104 S.Ct. 2013, 2021–23, 80 L.Ed.2d 622 (1984). That section states:

No action against the United States, the Secretary, or any officer or employee thereof shall be brought under section

---

**15.** We note that under this construction, § 405.1885(b), which allows the HCFA to order the intermediary to reopen a decision under some circumstances, would be an exception to the exclusive jurisdiction provided in § 405.1885(c).

**16.** Although plaintiffs also attack the Secretary's reopening procedures and Empire's failure to apply the TEFRA Adjustments to their NPRs on equal protection grounds, the complaint does not claim this allegation as an additional jurisdictional ground. Nor do plaintiffs provide any analysis in response to defendants' motion to dismiss under Rule 12(b)(1) for sustaining our

jurisdiction to decide these claims under a "constitutional jurisdiction." Once challenged, however, plaintiffs have the burden of demonstrating our jurisdiction to decide the claims at issue. Therefore, we need not decide whether plaintiffs' equal protection claim is cognizable in this Court. On the other hand, even assuming *arguendo* that federal courts have jurisdiction over constitutional challenges to Medicare part A reimbursements, we are doubtful that plaintiffs have raised a sufficient equal protection claim to sustain jurisdiction under that doctrine. *See Anderson v. Bowen*, 881 F.2d 1, 4–5 (2d Cir. 1989).

1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.

42 U.S.C. § 405(h).[17] "Thus, by channeling Part A claims to the appellate mill established under Title II of the Social Security Act, Congress foreclosed judicial review of Part A claims pursuant to federal question jurisdiction." *Abbey v. Sullivan*, 978 F.2d 37, 42 (2d Cir.1992). This restriction applies equally to substantive and procedural challenges. *Heckler*, 466 U.S. at 615, 104 S.Ct. at 2021–22. Therefore, because plaintiffs' claims arise under the Medicare statute, we must look beyond § 1331 to establish our jurisdiction to adjudicate these claims. *St. Francis Medical Center v. Shalala*, 32 F.3d 805, 809 (3d Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1357, 131 L.Ed.2d 215 (1995); *but see Beverly Hosp. v. Bowen*, 872 F.2d 483, 486 (D.C.Cir.1989) (section 1395oo exclusive only when jurisdiction under that section is genuinely available to provide redress, otherwise parties may invoke § 1331); *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667, 678, 106 S.Ct. 2133, 2139–40, 90 L.Ed.2d 623 (1986) (section 1331 jurisdiction exists to adjudicate challenges to validity of Secretary's instructions and regulations under Part B).

### 3. Section 1361

Section 1361, known as the Mandamus and Venue Act, grants to district courts "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. Although courts have recognized that § 1395ii restricts our review of actions arising under the Medicare statute to those avenues specifically provided by statute, the Supreme Court in *Heckler* reserved the question of whether Congress meant thereby to curtail our jurisdiction under § 1361. *Heckler*, 466 U.S. at 616, 104 S.Ct. at 2020–22.

■ It is well settled in this and other circuits, however, that notwithstanding § 405(h)'s sweeping language, mandamus jurisdiction is available under the Social Security Act in circumstances when the writ properly would issue. *See City of New York v. Heckler*, 742 F.2d 729, 739 (2d Cir.1984), *aff'd*, 476 U.S. 467, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986) (citing cases). Presumably, § 405(h)'s specific incorporation into the Medicare statute did not change this result vis a vis cases brought under that statute. *Abbey*, 978 F.2d at 43 ("... Title II of the Social Security Act serves as a template for review of Medicare Act Claims."); *New York State Dept. of Social Services v. Bowen*, 661 F.Supp. 1537, 1545 n. 11 (S.D.N.Y.1987), *rev'd on other grounds*, 846 F.2d 129 (2d Cir.1988) (affirming mandamus jurisdiction under Medicare statute). *But see Anderson*, 881 F.2d at 5 n. 11 (reserving question).

■ To warrant mandamus relief, plaintiffs must demonstrate: "1) a clear right ... to the relief sought; 2) a plainly defined and peremptory duty on the part of the defendant to do the act in question; and 3) no other adequate remedy." *Anderson*, 881 F.2d at 5 (citing *Lovallo v. Froehlke*, 468 F.2d 340, 343 (2d Cir.1972), *cert. denied*, 411 U.S. 918, 93 S.Ct. 1555, 36 L.Ed.2d 310 (1973)). Because plaintiffs have failed to show that the PRRB had a non-discretionary duty to reopen their cost reports, plaintiffs plea for mandamus relief must fail.

The regulations, the PRM, and common sense all dictate that a decision to reopen is completely within the province of the intermediary. First, the regulations provide that the intermediary "may" reopen a cost report on a motion from a provider. 42 C.F.R. § 405.1885(a) (1994). On the other hand, section 1885(b) and (d) provide two situations under which the intermediary "shall" reopen a cost report: if the HCFA orders it to do so, or if the report was procured through fraud. The Secretary's use of discretionary language on one hand and peremptory language on the other clearly indicates that the intermediary is not under a "duty" to reopen a cost report on a motion by a provider.

---

17. We assume without deciding that Empire, acting as an intermediary under contract with the Secretary, acts as "the Secretary, or any officer or employee thereof" for purposes of this subsection.

The PRM does not undermine this reading. Section 2931.2 states in pertinent part:

Whether or not the intermediary will reopen a determination, otherwise final, will depend upon whether new and material evidence has been submitted, or a clear and obvious error was made, or the determination is found to be inconsistent with the law, regulations and rulings, or general instructions.

Although this instruction clearly delineates the factors that the intermediary "will" use in making a reopening decision, a non-discretionary list, it, like section 1885(a), does not list any circumstances under which the intermediary is required to reopen a cost report. Moreover, we do not think that the instruction overrides the clearly discretionary language of section 1885(a). When read together, while allowing the intermediary latitude on the ultimate decision to reopen, sections 1885(a) and 2931.2 provide a framework for the intermediary's determination. Given the intermediary's regulatory-granted discretion, we are not permitted under our mandamus jurisdiction to second-guess its decision.

Finally, common sense dictates that we refrain from interposing our interpretation of the merits of plaintiffs' reopening pleas over that of the intermediary's. A motion to reopen is like a motion for reconsideration/rehearing before a court. No one would suppose that a court, through mandamus, could compel another court to reconsider a prior ruling. Instead, the proper avenue for review is through the appeal process. *See Binghamton*, 856 F.Supp. at 794. The same is true here.

Plaintiffs, for what ever reason, did not appeal their NPR's to the Board within 180 days of their issuance by Empire. However, the record does not indicate that plaintiffs could not have raised the instant claimed TEFRA Adjustments on any such appeal. The reopening procedure is not a substitute for the statutory appeal process, nor is it, in the strictest sense, a review process. Instead, it is a corrective process that the intermediary *may* undertake if it finds the factors of PRM § 2931.2 present. This discretionary process is not amenable to mandamus relief.

We note that at least one district court has used mandamus to compel an intermediary's reconsideration of an NPR. *Memorial Hospital v. Sullivan*, 779 F.Supp. 1410, 1413 (D.D.C.1991) (*Memorial II*). In that case, however, the Secretary directed the plaintiff to forego appeal and move to reopen before the intermediary. Moreover, the intermediary, in denying the plaintiff's request to reopen, made no finding that it had considered the factors specified in PRM § 2931.2. Neither of these factors that cut against characterizing the intermediary's denials as discretionary are present in the instant case. *See Albert Einstein*, 830 F.Supp. at 852 & n. 2. Because, in the instant case, Empire's decisions not to reopen plaintiffs' cost reports were discretionary, we may not direct their reopening under our mandamus jurisdiction. Therefore, we need not consider the merits of plaintiffs' claimed TEFRA Adjustments. To the extent that plaintiffs challenge Empire's decision not to reopen consideration of their cost reports and failure to incorporate the requested TEFRA Adjustments, those claims are dismissed under Rule 12(b)(1).

## III. CONCLUSION

Plaintiffs' motion for summary judgment is denied. Defendants' motions for summary judgment and to dismiss for lack of subject matter jurisdiction are granted as follows: 1) the decision of the PRRB that it does not have jurisdiction to review Empire's decisions not to reopen plaintiffs' cost reports is affirmed; and, 2) plaintiffs' claims challenging Empire's decision not to reopen their cost reports and failure to include their requested TEFRA Adjustments are dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction.

**SO ORDERED.**